HAWTHORNE, Justice.
 

 This is an action to have ascertained and determined judicially the location of the boundary line between the Parishes of St. Martin and Iberville, and the Police Jury of the Parish of Iberville has appealed from a judgment of the district court locating the boundary line as contended by the Police Jury of the Parish of St. Martin and decreeing the lands or area between the disputed lines to be situated wholly within the Parish of St. Martin.
 

 The Police Jury for the Parish of St. Martin instituted this suit against the Police .Jury for the Parish of Iberville, alleging that both the Parish of St. Martin and the Parish of Iberville were created by Act No.
 
 *447
 
 1 of 1807, and that the boundary line between these parishes was fixed and established by Act No. 130 of 1847; that under Section 2 of this act the true and correct boundary line between St. Martin and Iberville Parishes to the east and northeast of St. Martin Parish, extending from Whiskey Bay (Osea or Oski Bay) running north and - northwest to the south line of Township 6 South, Range 8 East, the south boundary of Pointe Coupee Parish, is now, and since 1847 has been, in the middle or thread of the East Fork of Bayou Alabama from its mouth in Whiskey Bay up to its intersection with the south boundary line of Pointe Coupee Parish; that all the lands to the •south and west of this alleged boundary line lie within the Parish of St. Martin, and those north and east thereof in the Parish •of Iberville.
 

 Plaintiff allege® that, notwithstanding the law defining and. fixing this boundary, the Parish of Iberville is arbitrarily and without warrant in law claiming as the boundary “a line commencing at a point .about three miles north of the mouth of the East Fork of Bayou Alabama in the southeast corner of Sec. 60 T. 8 S. R. 8 E., following said south line of Sec. 60 to the back line thereof, said line thence running north, northeast, north, northwest following the back lines of Secs. 60, 59, 58, 57, 56, 55, 54, 53, 52, 51, 50, 49, 48, 47, 46, 45, 44, 43, 42, 41, 40 and 39 in T. 8 S. R. 8 East and following the back lines of Secs. 32, 33, 34, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, 93 all in T.
 
 7
 
 S. R. 8 East, to a point where it intersects the Township line between T. 6 S. R. 8 East and T. 7 S. R. 8 E. about four and one-half miles west of the East Fork of Bayou Alabama”; that the boundary line as claimed by defendant is erroneous, arbitrary, and contrary to the proper legal interpretation of Section 2 of Act No. 130 of 1847; that between the two lines there is an area comprising approximately 10,432.44 acres, and that all of these lands lie to the south and west of, and are situated entirely on the west bank of, the East Fork of Bayou Alabama; that the bed or channel of the East Fork of Bayou Alabama exists today as it did in the year 1847, that no material change since that year has taken place in the channel or course of that bayou, and that it has always been and is at the present time a navigable stream.
 

 It is alleged that the Police Jury of St. Martin Parish pursuant to the provisions of Section 2624 of the Revised' Statutes of 1870, Section 6356, Dart’s Statutes, on February 19,1919, adopted an ordinance for the purpose of ascertaining and fixing the boundary line between the Parish of St. Martin and the Parish of Iberville, and by ordinance appointed Charles Gutekunst, civil engineer, as its surveyor, to meet on September 8, 1919, the surveyor to be appointed by Iberville Parish. The petition alleges a full compliance with Section 2624 of the Revised Statutes of 1870 except that it does not allege that due return of the
 
 *448
 
 proces verbal and map of the surveyor of the Parish of St. Martin was made to the presidents of the police juries of both parishes, or that plaintiff has caused the map and proces verbal to be filed and preserved in the offices of the recorders of these parishes as required by law.
 

 The petition further alleges that the Parish of St. Martin is entitled to have the survey of Charles Gutekunst, filed on December 1, 1919, recognized as being officially correct and as correctly fixing and describing the boundary line between the parishes, and, further, that a proper and legal interpretation of Section 2 of Act No. 130 of 1847 establishes the boundary line between Iberville and St. Martin Parishes in the middle or thread of the East Fork of Bayou Alabama from its mouth in Whiskey Bay running north and then northwest to the south boundary line of Pointe Coupee Parish, and that all lands west and south of the line are situated wholly within the Parish of St. Martin.
 

 The defendant, Police Jury of the Parish of Iberville, first filed a plea of prematurity aimed at the fact that plaintiff had failed to allege in its petition due return of the proces verbal and map made by. Charles Gutekunst. Thereafter plaintiff amended its petition to show a full compliance with Section 2624 of the Revised Statutes of 1870, and, when this amended petition was filed, the plea of prematurity passed out of the case.
 

 To plaintiff’s petition defendant, Police Jury of the Parish of Iberville, filed an answer, admitting that Iberville Parish was created by virtue of Act No. 1 of 1807, and that the boundary line between that parish and the Parish of St. Martin was fixed and established by Section 2 of Act No. 130 of 1847; that the boundary line between the two parishes which plaintiff’s petition alleges defendant is contending for, and as described in the petition, is the true and correct boundary line.
 

 Defendant’s answer denies all material allegations of the petition, particularly those with reference to the survey made by Charles Gutekunst pursuant to Section 2624 of the Revised Statutes of 1870, and alleges that the boundary line between the Parishes of Iberville and St. Martin is, and has since 1847 been, recognized as including within the Parish of Iberville all of the lands lying between the disputed boundary lines, and that all of these lands are shown to lie within the Parish of Iberville by various maps and surveys, all filed in evidence.
 

 Defendant avers that the lands have always been assessed, taxes paid thereon, and muniments of title thereto recorded in the Parish of Iberville, and have been recognized by all persons owning lands situated in this area to be in the Parish of Iberville; that the Police Jury and public officials of the Parish of St. Martin have since 1847 recognized these lands to be within the Parish of Iberville; that following a conference between the officials of these two parishes the officials of the Parish of St. Martin acquiesced in the correctness qf the
 
 *449
 
 boundary line between the parishes as contended for by defendant, and pursuant thereto the Police Jury for the Parish! of Iberville on August 1, 1910, passed a resolution declaring and fixing the boundary line in dispute, and that for all of these reasons the Parish of St. Martin and its officials are estopped from now questioning the correctness of the establishing of said line.
 

 The case was submitted to the district court on an agreed statement of facts and exhibits. The trial court rendered judgment decreeing and fixing the boundary line as contended for by the Parish of St. Martin, and decreeing the lands or area between the disputed lines to be situated wholly in the Parish of St. Martin. From this judgment defendant, Police Jury for the Parish of Iberville, has appealed to this court.
 

 On the map made by Charles Gutekunst, civil engineer, on December 1, 1919, filed in evidence, plaintiff and defendant have stipulated that they hava superimposed a red line showing the boundary line contended for by the Police Jury for the Parish of Iberville. This boundary line is fully described in plaintiff’s petition, as set out hereinabove. We have attached to this opinion 'a photostatic copy of this map, and for clarity have designated thereon the boundary line contended for by the Parish of Iberville by the letters “A-B-C”, and the line contended for by the Parish of St.Martin (which runs up the middle or thread of the East Fork of Bayou Alabama from the southeast corner of Section 60 to the township line between Townships 6 and 7 South, Range 8 East) by the letters “A-D”.
 

 An examination of this map discloses that only a portion of the boundary line as fixed and defined in Section 2 of Act No. 130 of 1847 is in dispute, being that portion which is described in the act as “thence following the said branch [the East Fork of Bayou Alabama],
 
 including the inhabitants of both sides
 
 thereof, upwards to the township line between townships six and seven, or the southern boundary of the parish of Pointe Coupée”. (All italics ours.)
 

 The title to Act No. 130 of 1847 reads as follows: “AN ACT To define the boundary line between the parishes of Iberville and Ascension, and the boundary line between Iberville and St. Martin.”
 

 Section 1 of the act fixes the boundary line between the Parishes of Iberville and Ascension. Section 2 establishes the boundary line between the Parishes of Iberville and St. Martin, reading thus: “Sec. 2. Be it further enacted, &c., That the line between the parishes of Iberville and St. Martin shall begin at a point where the line between townships eleven and twelve strikes the Atchafalaya commonly called Grand River, or Old River, on its western bank, west of and near Lake Natchez; thence running west along said township line until the same strikes the eastern branch of Bayou Pigeon; thence
 
 along the middle
 
 of said Bayou, and mid-
 
 *451
 
 die-of little Bayou Pigeon to the north of Cross Bayou; thence
 
 along the nviddle
 
 of Cross Bayou to its junction with Lake Long, commonly called Murphy’s Lake; thence through said lake to a point on its western shore, three miles north of said township line; thence west parallel therewith to lake Chicot; thence along the eastern border of said lake Chicot to the main eastern navigable entrance into Bayou Sorel Bay; thence northwardly
 
 along the middle
 
 of said entrance or pass, and bayou Sorel Bay to the upper Bayou Pigeon; thence
 
 along the middle
 
 thereof, northwardly to its junction with the Atchafalaya, called Grand River; thence
 
 along the middle
 
 of Grand River to Oski Bay;:
 
 thence through the middle
 
 thereof to the eastern branch of the bayou Alabama;
 
 thence following the said branch, including the inhabitants of both sides thereof,
 
 upwards to the township line between townships six and seven, or the southern boundary of the parish of Pointe Coupée; the portion north and east of said line to belong to the parish of Iberville, and south and west to the parish of St. Martin.”
 

 
 *450
 

 
 *451
 
 It is a fundamental rule of statutory construction, well settled in law, that it is the duty of the court to ascertain and give effect to the intention of the Legislature as expressed in the statute, and that in construing the statute all parts thereof should be construed together and each part or section should be construed in connection with every other part or section, as the ultimate object is to reach the legislative intent. Reynolds v. Baldwin, 1 La. Ann. 162; Louisi-Western R. Co. v. Village of Duson, 146 La. 190, 83 So. 455; State ex rel., Lyons v. Democratic State Central Committee et al., 165 La. 531, 115 So. 740; Houghton v. Hall, 177 La. 237, 148 So. 37; 2 Sutherland Statutory Construction (Plorack’s Third Edition), Section 4703, page 336.
 

 It is equally well settled that the court must give effect to all parts of a statute, if possible, and construe no sentence, clause, or word as meaningless and as sur • plusage if construction giving force to, and preserving, all words can legitimately be found, and the court should construe an expression in a statute so as to give it effect rather than to render it meaningless in respect to context. Clark et al. v. Morse, 16 La. 575; State v. Fontenot, 112 La. 628, 36 So. 630; State v. Mestayer, 144 La. 601, 80 So. 891; State v. Texas Co. et al., 205 La. 417, 17 So.2d 569; 2 Sutherland Statutory Construction (Horack’s Third Edition), Section 4705, page 339.
 

 The clause “thence following the said branch, including the inhabitants of both sides thereof, upwards to the township line between townships six and seven, or the southern boundary of the parish of Pointe Coupée” is certainly ambiguous, and it has been difficult for us to determine the true intent and meaning of the Legislature in placing it in the act. It is a very indefinite call to be found in a boundary description.
 
 *452
 
 We are convinced, however, that the Legislature included these words in the statute for some definite purpose, and that they cannot be declared meaningless if we can give them a reasonable interpretation.
 

 It is to be noted that in fixing the boundary line the Legislature, in every other instance when a bayou, bay, or river constituted a part of the boundary, used the expression “thence along (or through) the middle of” said bayou or other watercourse, until the description of the line reached the East Fork of Bayou Alabama. At this point the Legislature changed its terminology and, instead of repeating “thence along (or through) the middle thereof”, used the expression “thence following the said branch, including the inhabitants of both sides thereof”. We do not think that anyone can question the fact that, when the East Fork of Bayou Alabama was reached in the description, the Legislature had some definite and fixed reason for departing from the phraseology used to describe the course of the boundary along or through the middle of the various other watercourses. Otherwise the same language and identical words could and would have been used as had been employed before in the act, and the description of this part of the boundary would have read “thence along the middle of said branch”. It is clear to us that the Legislature did not intend that the middle of the East Fork of Bayou Alabama was to be the boundary line between the Parishes of Iberville and St. Martin.
 

 The acts of 1847, passed by the Legislature over a hundred years ago, were published both in English and in French. The clause “thence following the said branch, including the
 
 inhabitants
 
 of both sides thereof, upwards to the township line between townships six and seven, or the southern boundary of the parish of Pointe Coupee” appears in the French text as “de la, elle suivra la dite branche des deux cotés y compris les
 
 habitations,
 
 jusqu’au dessus de la ligne de township entre les townships six et sept, ou la limite sud de la paroisse Pointe Coupee.”
 

 The writer of this opinion has obtained a translation of this French clause into English 'by competent and qualified French scholars, which translation reads as follows: “thence it [the line] shall follow the aforesaid fork including the
 
 plantations
 
 on both sides, as far up as the township line between townships six and seven, or the southern boundary of the Parish of Pointe Coupée”.
 

 This translation of the French text discloses that it is not so ambiguous and uncertain as the English text. As pointed out in the case of Parish of Lafourche v. Parish of Terrebonne, 34 La. Ann. 1230, we have not lost sight of the rule of our jurisprudence that, when the two texts differ, the English text must prevail, but that, “ ‘when a law, written in the language of the Constitution is doubtful, the
 
 *453
 
 sense in which the members of our Legislature, who at that time spoke French understood it, may be safely called to our assistance to explain what is uncertain’
 

 We concede it to be true that it is very difficult to define or establish a boundary line so as to include the
 
 inhabitants
 
 on both sides of a watercourse. But this is not true with respect to the
 
 plantations
 
 located on both sides of such a watercourse, as these are definite areas and can be ascertained with certainty at the time, or shortly after, an act is adopted containing such a course or call.
 

 The fact that the Legislature changed its phraseology shows that it was its intention not to establish the boundary along the middle or thread of the East Fork of Bayou Alabama. We therefore conclude that it was the intention of the Legislature to follow said fork or branch upward so as to include the plantations on both sides thereof within
 
 either
 
 the Parish of Iberville
 
 or
 
 the Parish of St. Martin.
 

 In our efforts to throw some light on this complex problem, we have examined the journals of both the House and the Senate of 1847 for the history of Act No. 130 of that year.
 

 According to these records, on March 9, 1847, a Mr. Templet presented to the House of Representatives two memorials of certain inhabitants of the Parish of Iberville relative to the division line between the Parishes of Ascension and Iberville. These memorials were referred to the Committee on Parochial Affairs. On March 12 the chairman of that committee, pursuant to these memorials, reported the following bill: “An act to establish the boundary line between the parishes of Iberville and Ascension." The bill went through its first, second, and third readings, and passed with its title.
 

 On March 12, 1847, the assistant clerk of the House requested the concurrence of the Senate in certain bills, among these being “An act to establish the boundary line between the parishes of Iberville and Ascension”. On March 17 this bill underwent its first reading in the Senate. On March 25 on motion of Mr. Kenner the rules were suspended, and the Senate took up “An act to establish the boundary line between the parishes of Iberville and Ascension”. This bill then underwent its second reading in the Senate and was, on motion of Mr. Adams, amended and adopted as amended. On motion of Mr. Kenner the rules were again suspended, and the bill underwent its third reading and passed as amended. On motion of Mr. Adams the title of the bill was then amended by adding at its end the words “and the boundary line between Iberville and St. Martin”. On motion the title was adopted as thus amended.
 

 On March 26 the House of Representatives was informed of the concurrence of the Senate with amendment to title and body of “An act to establish the boundary line
 
 *454
 
 between the parishes of Iberville and Ascension, and the boundary line between Iberville and St. Martin”, and on March 29 the bill was read and postponed. On April 6, Mr. Derbes moved to strike out that portion annexing a portion of the Parish of St. Martin to the Parish of Ascension. This motion was lost. Thereupon Mr. Williams moved to concur in the amendments, and on adoption of this motion it was carried by a yea and nay vote, and the amendments of the Senate were concurred in, and the clerk was directed to inform the Senate of this fact.
 

 Mr. Kenner, who was mentioned in the Senate entry of March. 25, 1847, and on whose motion the rules were suspended and the bill read and taken up, was Mr. Duncan F. Kenner, senator from the Parish of Ascension. It is significant that the Mr. Adams who is mentioned in the same senate entry, and who made the motion to amend the bill and place therein Section 2 which defines the boundary line between the Parishes of Iberville and St. Martin, and on whose motion the title was also amended by adding the words “and the boundary line between Iberville and St. Martin”, was Mr. Christopher Adams, senator from the Parishes of Iberville and West Baton Rouge.
 

 The Senate and the House journals clearly disclose that the act which we are now considering had its inception or beginning as a result of two memorials presented to the Legislature of that year by inhabitants of Iberville Parish, and was primarily steered through the Senate by the Iberville Parish senator, on whose motion the title and body of the bill were amended to fix the boundary between Iberville and St. Martin Parishes. If the senator and the representative who represented the Parish of St. Martin in the Senate and the House were present and took any interest in the passage of the bill, the journals fail to disclose this fact.
 

 The title to the act is divided into two parts, the first to define the boundary line between the Parishes of Iberville and Ascension, and the second the boundary line between Iberville and St. Martin, and the act had for its purpose to establish these boundary lines primarily between the Parish of Iberville and the adjoining Parishes of Ascension and St. Martin, or, in other words, the act deals primarily with the Parish of Iberville.
 

 With these facts in mind, considering the act’s inception as a result of memorials from residents of Iberville Parish, and the fact that it was steered through the Senate by the senator who represented that parish, we believe that, by the use of the words “thence following the said branch, including the inhabitants of both sides thereof, upwards to the township line”, the Legislature intended that the plantations on both sides of the bayou were to be included in the Parish of Iberville.
 

 
 *455
 
 We are supported in this view by subsequent events which occurred during a period of some 40 or 50 years after the date of the act.
 

 Defendant has filed in the record a photostatic copy of a map showing the area in controversy, that is, a part of Powell’s map of the Parishes of Pointe Coupee, West Baton Rouge, and Iberville and parts of St. Martin and Ascension, approved by William J. McCullough, surveyor general of the State of Louisiana, in 1858, or 11 years after the adoption of the statute; copies of township maps or plats of Townships
 
 7
 
 and 8 South, Range 8 East, approved by John Lynch, surveyor general of the State of Louisiana, in 1870, the originals of said maps being filed in the archives of the clerk and recorder of the Parish of Iberville since 1877 or earlier, and were no doubt procured by the Police Jury of Iberville Parish pursuant to the provisions of Section 31 of Act No. 42 of 1871, which made it the duty of the police jury of each parish to procure at the expense of the parish from the original records of the United States surveys a correct map, properly authenticated, of each and every township and part thereof contained in such parish, which maps were to be deposited with the recorder and made accessible to the parish surveyor in making surveys and to the tax collector in preparing assessment rolls; Dickinson’s map of 1883, made pursuant to a resolution of the Police Jury of the Parish of Iberville and covering the Parish of Iberville, most of West Baton Rouge, and parts of St. Martin, Ascension, and Pointe Coupee Parishes; copy of Hardee’s official map of the State of Louisiana of 1895, made pursuant to Act No. 143 of 1894, which provided for an official map of the State of Louisiana to be made by William Joseph Hardee and to be recorded in the state offices and with each parish, and, further, that this map should show “bayous and other watercourses, all removals of parish seats, all new parishes and
 
 corrected parish boundaries,
 
 * * * compiled from latest and most authentic private and public and government surveys * *
 

 All of these maps without exception show the boundary line between the Parishes of Iberville and St. Martin to be as contended by defendant-appellant, the Police Jury of the Parish of Iberville, and conclusively prove that for a period of approximately 50 years, from the adoption of the act in 1847 to the year 1895, the boundary line between these parishes was at no time considered to be up the middle of the East Fork of Bayou Alabama from the southeast corner of Section 60, Township 8 South, Range 8 East, to the township line between Townships 6 and 7 South, Range 8 East, or the south line of Pointe Coupee Parish.
 

 In addition to these maps we find in the record a copy of Thomas S. Hardee’s 1871
 
 *456
 
 official map of the State of Louisiana, made pursuant to Act No. 166 of 1868. This map does not show any sections thereon, and we are unable to follow the parish boundary line with any degree of certainty. However, it appears that the map shows the line between these parishes to be somewhat farther west than contended by the defendant herein, but it does conclusively show that the maker of this map did not consider the East Fork of Bayou Alabama to be the boundary line between them.
 

 When the Legislature by Act No. 130 of 1847 fixed and defined the boundary line between these two parishes, it exercised a legislative function. The interpretation of this statute is a judicial function, and we realize and concede that the map compilers could not legally fix or establish any boundary other than that defined and called for by the act. We are of the opinion, however, that the map makers who compiled and made the maps discussed hereinabove, at or near the time when the act was passed, may reasonably be supposed to be better acquainted than their descendants with the true intent and object of the Legislature in using the ambiguous clause which is the cause of this controversy, and, when they marked and fixed the line on these maps as now contended for by appellant, they must have had good reason to believe that they were doing what the Legislature intended them to do.
 

 Although the act was passed over 100 years ago, so far as the evidence in the record shows the Gutekunst survey of 1919, made 72 years after the adoption of the act, was the first to establish and show the boundary line to be up the middle of the East Fork of Bayou Alabama from Whiskey Bay to the township line. To accept this survey it would be necessary for us to delete from the act and comletely ignore that part of it which includes the inhabitants or plantations on both sides of the bayou in one parish or the other and to give no effect whatsoever to this clause — a clause which we think was deliberately and designedly placed in the act and which has a reasonable meaning and interpretation.
 

 Appellee contends that under this ambiguous clause the Parish of St. Martin would have as much right to claim the irregular sections fronting on the east ■bank of the bayou as the Parish of Iberville has to claim those situated on the west bank thereof. This may be true, but it is significant to us that for a period of almost 100 years the authorities of St. Martin Parish have made no such claim and have seen fit to ignore the clause, while on the other hand the authorities of the Parish of Iberville have construed the phrase so as to include the irregular sections on the west bank of the East Fork of Bayou Alabama in Iberville Parish and have contended that it was the true intent and object of the Legislature that
 
 *457
 
 these sections be included within the boundaries of that parish.
 

 In the record there is an affidavit of Joseph A. Grace, clerk of court for the Parish of Iberville from 1892 to 1926, in which he swears that in the summer of 1910 the district attorney from the judicial district of which St. Martin Parish is a part and a committee of police jurors of that parish came to the Parish of Iberville for the purpose of discussing, settling, and fixing the boundary between these parishes, and that, after a discussion with the Police Jury of the Parish of Iberville and after examining records, including township maps, Dickinson’s map, and the Hardee maps, the district attorney and the committee from St. Martin Parish advised the Police Jury of the Parish of Iberville that the disputed area lying west of the East Fork of Bayou Alabama was really within the Parish of Iberville, and agreed that, if the Police Jury of Iberville Parish would pass a resolution designating the boundary as fixed by these maps, the district attorney and the committee would advise the Police Jury of the Parish of St. Martin to pass a similar resolution.
 

 Both plaintiff and defendant admit that, if Joseph A. Grace were sworn as a witness, he would testify in accordance with this affidavit, but counsel for plaintiff do not admit that the facts stated in the affidavit are relevant or have any probative value. In brief they point out, and we think correctly so, that this committee had no authority to abandon and release any rights of the Parish of St. Martin. However, the record discloses that on August 1, 1910, the Police Jury of the Parish of Iberville acted in accordance with the facts shown in the affidavit and adopted a resolution fixing the boundary line between the two parishes by the various maps herein-above discussed, and this is the line which defendant now claims is the true and' correct one.
 

 It is also true that on August 8, 1910, the Police Jury of the Parish of St. Martin met and received the report of the committee appointed to confer with the Police Jury of Iberville Parish relative to the boundary line between these parishes, and the proceedings of this meeting show that final action in the premises was deferred, and the committee was discharged with thanks.
 

 We concede that the action of this committee could not define and establish the boundary line, the fixing of which, as we have pointed out, was strictly a legislative function. Nevertheless its actions indicate that the committee itself accepted the interpretation placed by the Parish of Iberville on the ambiguous clause contained in the act so as to fix the boundary line as contended for by the authorities of that parish.
 

 Under a resolution of the Police Jury of St. Martin Parish, adopted February 19, 1919, pursuant to the provisions of Section 2624 of the Revised Statutes of 1870, a
 
 *458
 
 survey of the area in dispute was made by Charles Gutekunst, surveyor and civil engineer, and it is this survey which shows the boundary fixed by Act No. 130 of 1847 to be along the middle of the East Fork of Bayou Alabama up to the township line, and is the survey on which appellee relies as being a true and correct interpretation of the act of the Legislature.
 

 Following this survey, on August 5, 1920, the Police Jury of the Parish of St. Martin instituted suit against the Police Jury of Iberville Parish to have this survey recognized and approved. Defendant in that suit, Police Jury of Iberville Parish, filed an exception of no cause or right of action. This suit was dismissed on plaintiff’s motion on March 10, 1941, some 21 years after it was filed, no further steps having been taken therein in the meantime.
 

 In its answer to the present suit, defendant, Police Jury of the Parish of Iberville, denies service upon it of the ordinance of the Police Jury of St. Martin Parish, adopted February 19, 1919. In the stipulation of facts it is admitted that the records of the Parishes of Iberville and St. Martin do not show that the Gutekunst map of 1919 and the proces verbal -thereof were filed with the president of the Police Jury of Iberville Parish prior to the institution of the present suit.
 

 We find in the record photostatic copies of patents from the State of Louisiana and a certificate of the register of the State Land Office' showing patents as having been issued by the state to every section (except two or three) of land in the disputed area, or on the west bank of the East Fork of Bayou Alabama. These patents in every instance where the parish in which the land is situated is named designate the land described as being in the Parish of Iberville, and the other patents do not name or designate any parish whatsoever. It is therefore evident that the State Land Office interpreted Act No. 130 of 1847 as placing these lands in the Parish of Iberville.
 

 According to the stipulation of fact, the greater portion of the deeds, transfers, and muniments of title affecting the lands in the area in controversy, probably as much as 85 per cent thereof, are recorded independently and only in the Parish of Iberville, while some of the deeds, transfers, and muniments of title affecting these lands, probably 15 per cent thereof, are recorded in the Parish of St. Martin. This clearly indicates to us that the majority of the property owners in the disputed area were of the opinion and belief that the property which they owned was situated in the Parish of Iberville.
 

 It is also true that property in the disputed area has been assessed in both parishes, that tax sales of lands in this area have taken place in both parishes, and that in the records of the Parish of St. Martin there is a book of entries, “Abstract Record Parish of St. Martin”, certified by John S. Lanier, register, State Land Office, and that this record includes abstracts of entries
 
 *459
 
 to every section of land in the disputed area except two sections and a fractional part of one other. We do not, however, find any patents in the record showing the lands in controversy to be situated in the Parish of St. Martin.
 

 Plaintiff has offered in evidence an official map of Louisiana, approved January 12, 1938, compiled by the Board of State Engineers by the authority of Act No. 159 of 1928, and also quadrangle map, edition of 1935, by the United States Army Corps of Engineers. The 1938 official map of the State of Louisiana shows the boundary line between these two parishes as contended for by plaintiff. However, we do not think that this map is of very much value in deciding this controversy when weighed with the numerous other earlier maps discussed hereinabove, all of which support the contention of defendant. The quadrangle map plainly states thereon that the boundary line between these two parishes is in litigation.
 

 Since the Powell map of 1858, the township maps covering the area in controversy, certified by John Lynch in 1870, Dickinson’s map of 1883, and the Plardee map of 1895, the Legislature of this state has been in session many, many times, and, though eách of these maps indicates the boundary line between these parishes to be as contended for by the Police Jury of the Parish of- Iberville, the Legislature during all this period of dime has never indicated by, any act that the map makers in compiling, these maps did not correctly interpret Act No.
 
 130
 
 of
 
 1847,
 
 or that the line as set out on these maps was not the correct line as called for in the act.
 

 After a careful consideration of the entire record, we are of the opinion that the boundary contended for by the Police Jury of the Parish of Iberville is the boundary as defined and fixed in Act No. 130 of 1847, and that said boundary line is the one within the object and intention of the Legislature of that year.
 

 Similar questions have arisen in our sister states, and we find the following expressions from the courts of Ohio and Virginia :
 

 “The condition of things at the time the law was passed, the surroundings and circumstances calling for the law, the manner in which it was received and interpreted by those who were affected by the law, are weighty, evidentiary facts in determining the meaning and intention of the legislature as expressed by the law.
 

 íjí ^ ‡ 5k Sfc *
 

 “Endlich on Interpretation of Statutes, say [says] in section 357, Tt is said that the best exposition of a statute or any other document is, that which it has received from cotemporary authority. Where this has been by enactment or judicial decision, it is, of course, to be accepted as conclusive. But further, the meaning publicly given by cotemporary or long professional usage, is presumed to be the true one, even when the language has etimologically or popularly a
 
 *460
 
 different meaning. Those who lived at or near the time when it was passed may reasonably be supposed to be better acquainted than their descendants, with the circumstances to which it had relation as well as with the sense then attached to the legislative expression and the long acquiescence in the interpretation put upon its enactment by notorious practice, may perhaps be regarded as some sanction and approval of it. It gives the sense of community of the terms made use of by the legislature. If there is ambiguity in the language, the understanding and application of it, when the statute first comes into operation sanctioned by long acquiescence on the part of the legislature and judicial tribunals, is the strongest evidence that it has been rightly explained in practice.’ ” Commissioners of Warren County v. Commissioners of Butler County, 6 Ohio Dec. 536.
 

 “And the court is further of opinion that in determining the territorial boundaries specified in said acts due weight should be given to the cotemporaneous interpretation placed upon the same by the courts and other lawful authorities within the same and by the population at large residing therein; and that maps of such territory made out or published by authority of law may properly be referred to as persuasive evidence in support of the pretensions of either party to have such weight as consistently with the other testimony in the cause they shall appear to be entitled to.” Hamilton v. McNeil et al., 13 Grat., Va., 389.
 

 For the reasons assigned, the judgment appealed from is reversed, and the boundary line between the Parishes of Iberville and St. Martin, starting at Whiskey Bay, is judicially determined and located pursuant to the provisions of Section 2 of Act No. 130 of 1847, as follows: Along the middle of the East Fork of Bayou Alabama to the southeast corner of Section 60, Township 8 South, Range 8 East; thence following the south line of said Section 60 to the back line thereof; thence running north, northeast, north, northwest, following the back or west lines of Sections 60, 59, 58, 57, 56,1 55, 54, 53, 52, 51, 50, 49, 48, 47, 46, 45,' 44, 43, 42, 41, 40, and 39, in Township 8 South, Range 8 East, and following the back or west lines of Sections 34, 33, 32, 71, 70, 69, 68, 67, 66, 65, 64, 63, 62, 61, 60, 59, 58, 57, 74, 52, 93, 45, 44, 43, 42, 41, 40, 39, 38, 37, and 36, in Township 7 South, Range 8 East, to a point where it intersects the township line between Township 6 South, Range 8 East, and Township 7 South, Range 8 East, or the southern boundary of the Parish of Pointe Coupee, as shown on the Powell map of 1858.
 

 All costs insofar as are allowed by law . are to be paid by appellee, Police Jury of the Parish of St. Martin.