Dear Mr. Neuner:
On behalf of and with the approval of the Louisiana Public Defender Board, you have asked for an opinion from the attorney general regarding the proper interpretation of the statutory language of R.S. 15:152(C), which provides for the salary of the new state position of "State Public Defender."
R.S. 15:152(C) provides as follows: "The state public defender shall receive an annual salary equal in amount to a judge of the courts of appeal of this state, as provided in R.S. 13:311."
R.S. 13:311, in turn, provides,
 "The salary of each judge of the courts of appeal in this state shall be eighty thousand dollars per annum, payable monthly on his own warrant. However, the chief judges of the courts of appeal shall be entitled to a pay differential, in an amount not to exceed five percent, which amount shall be included in the judicial budget, to compensate for administrative duties of the position of chief judge."
The problem arises from the fact that the actual salary of appellate court judges in Louisiana is not $80,000 but rather in the range of $124,468.54, due to the operation of the procedures provided by R.S.13:10.3 and R.S. 13:42-49, especially the latter. You have advised us that you and perhaps some of the other members of the Louisiana Public Defender Board believe that the legislature made a technical mistake in referencing only R.S. 13:311 in R.S. 15:152(C) and thereby appearing to limit the state public defender's salary to $80,000. Be that as it may, in interpreting a statute, a search is made to ascertain the legislative intent of the statutory provision as expressed in the *Page 2 
words that the legislature has itself used in the provision; if those words themselves are clear and unambiguous, then the statute must be interpreted and applied as written. Legislative history and extrinsic evidence cannot be used to attempt to create an ambiguity in the first place; the first thing that must be done is to examine the words of the statute itself. If the words of the statute are themselves clear and unambiguous, the statute must be interpreted and applied as written.
As the Supreme Court of Louisiana recently explained,
 "First and foremost is the rule that legislation is the solemn expression of the legislative will and, therefore, the interpretation of a law primarily involves the search for the legislature's intent. Louisiana Municipal Association, 04-0227, p. 35, 893 So.2d at 836; Detillier v. Kenner Regional Medical Center, 03-3259, p. 3 (La. 7/6/04), 877 So.2d 100, 103; Sultana Corporation v. Jewelers Mutual Insurance Company, 03-0360, p. 3 (La. 12/3/03), 860 So.2d 1112, 1115. The starting point in ascertaining that legislative intent is the language of the statute itself. Moss v. State, 05-1963, p. 16 (La. 4/4/06), 925 So.2d 1185, 1197; Touchard v. Williams, 617 So.2d 885, 888 (La. 1993). In examining that language, words and phrases are to be read in their context and to be accorded their generally prevailing meaning. LSA-C.C. art. 11; LSA-R.S. 1:3. It is presumed that every word, sentence, or provision in a law was intended to serve some useful purpose, that some effect is to be given to each such provision, and that no unnecessary words or provisions were employed. Moss, 05-1963 at 15, 925 So.2d at 1196; Sultana Corporation, 03-0360 at 9, 860 So.2d at 1119. As a result, courts are bound, if possible, to give effect to all parts of a statute and to construe no sentence, clause, or word as meaningless and surplusage if a construction giving force to, and preserving, all words can legitimately be found. Moss, 05-1963 at 15, 925 So.2d at 1196; St. Martin Parish Police Jury v. Iberville Parish Police Jury, 212 La. 886, 33 So.2d 671, 676 (1947).
 "When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written, and no further interpretation may be made in search of the legislature's intent. LSA-C.C. art. 9; LSA-R.S. 1:4. [It is only w]hen the language of a law is susceptible of different meanings, [that] it must be interpreted as having the meaning that best conforms to the purpose of the law. LSA-C.C. art. 10. Finally, when the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole. LSA-C.C. art. 12. *Page 3 
 * * * "The City fails to examine the language of the constitutional provision to determine whether it is clear and unambiguous, and therefore must be applied as written, or whether it is subject to more than one reasonable interpretation, and therefore, ambiguous, authorizing resort to legislative history to discern the legislative intent. The City starts with the legislative history and uses that legislative history to construct an argument for the ambiguity of the constitutional provision. However, it is well-settled in our jurisprudence that the appropriate starting point is the language of the statute itself. Touchard v. Williams, 617 So.2d 885, 888 (La. 1993). Where, as here, that language is straightforward and unambiguous, no further interpretation may be made in search of legislative intent. LSA-C.C. art. 9; East Baton Rouge Parish School Board, 02-2799 at 6-7, 851 So.2d at 1005 (Weimer, J., dissenting) ("[O]nce it is determined that the constitutional provision is unambiguous, there is no need to evaluate the intent of the framers and voters."). The legislative intent is made manifest in the words of the constitutional provision. Willis-Knighton Medical Center v. Caddo-Shreveport Sales and Use Tax Commission, 04-0473, p. 41 (La. 4/1/05), 903 So.2d 1071, 1096; State v. Williams, 2000-1725, p. 13 (La. 11/28/01), 800 So.2d 790, 800."
City of New Orleans v. Louisiana Assessors' Retirement and ReliefFund, 2005-2548, pp. 11 and 16, (La. 10/1/07), 2007 WL 2823223 (La.).
The legislature provided clearly that the salary of the state public defender shall be equal to the salary of an appellate court judge asprovided by R.S. 13:311. R.S. 13:311 provides the only statutorily-set amount for an appellate court judge in terms of dollars. R.S. 13:311 is still effective for such purpose, despite other statutes allowing the judicial compensation commission to recommend and the legislature to approve a supplemental salary in the form of a percentage thereof.
Indeed, the legislature did not simply provide that the salary of the state public defender shall be equal to that of the court of appeal judges. To so interpret R.S. 15:152(C) would be to render the statutory words as provided in R.S. 13:311 both meaningless and surplusage. The proper interpretation is that, being words used by the legislature in the statute, they are bound to have some meaning and purpose. Such purpose, of course, is to limit the salary of the state public defender to $80,000 and to avoid the application of R.S. 13:10.3 and R.S.13:42-49, which are mentioned nowhere in the statute. If the legislature intended otherwise, it might have provided that the salary of the state public defender be equal to that of a court of appeal judge as provided by R.S. 13:311, R.S. 13:10.3, and R.S. 13:42-49. But it did not so provide.
Moreover, such a legislative scheme appears to be entirely reasonable. An examination of House Concurrent Resolution 30 of the 2001 Regular Session of the *Page 4 
Louisiana Legislature (legislatively approving supplemental judicial compensation through 2003), for example, reveals some of the lengthy and difficult work of the Louisiana Judicial Compensation Commission and its staff and Dr. Loren Scott of Louisiana State University. It cannot be emphasized enough that these entities, in arriving at a recommendation to increase judicial salaries in Louisiana, thoroughly examined and evaluated a number of factors, most of which were unique to judges and have nothing to do with public defenders as such, as recited by the House Concurrent Resolution and as follows:
 "[T]he Judicial Compensation Commission held public meetings during the months of May, 1996, January, 1998, April, 1998, March, 1999, December, 1999, January, 2000, and January, 2001, and received input from the Louisiana Association of Business and Industry, various chambers of commerce, the Louisiana State Bar Association, the Louisiana Trial Lawyers Association, the Louisiana Association of Defense Counsel, and active and retired members of the judiciary. * * * [T]he Judicial Compensation Commission has considered the many aspects and facets of judicial salaries. . .includ[ing] consideration of the studies of, and information provided by, the National Center for State Courts and the American Judicature Society, and. . .recognition of the eroding effect of inflation upon the purchasing power of judicial salaries in the state of Louisiana, the compensation paid to judges in other southern states, and the compensation paid to other comparable positions in Louisiana and other southern states."
House Concurrent Resolution 30 of the 2001 Regular Session of the Louisiana Legislature.
It appears reasonable for the legislature to separate, from the setting of the state public defender's salary, consideration of aspects and factors which are unique to the work of judges and their compensation.
Following the proper rules for statutory interpretation as explicitly recited by the Supreme Court of Louisiana, we are compelled to conclude that the words as provided in R.S. 13:311 were intended by the legislature to be meaningful and effective and not mere surplusage and that the legislature expressed an intent to set the state public defender's salary at $80,000 by the use of the language it employed in the statute as enacted. If the legislature did, indeed, make a mistake and failed to express what it really meant, then this mistake should be promptly brought to the attention of lawmakers so that the legislature may amend the statute to express its true intent. *Page 5 
We trust that this opinion has fully answered your request, but if you have any further questions, please do not hesitate to ask them of us. With warmest regards, we remain
 Yours very truly,
 JAMES D. "BUDDY" CALDWELL
 ATTORNEY GENERAL
 By: _______________________
 THOMAS S. HALLIGAN
 Assistant Attorney General
 JDC/TSH/sfj