Dear Ms. Jacob-Tucker:
Through you, the St. Charles Parish Council has requested a legal opinion from our office interpreting its major zoning ordinance (published on-line at "http://www.municode.com/resources/gateway.asp?pid=11599 
sid=18" as Appendix "A" to the St. Charles Parish Code), which appears to embody the overall parish zoning plan, in light of a more recent zoning ordinance, on which a public hearing was held on May 19, 2008, proposing a change in the zoning classification of property which surrounds the present grain elevator facility of Bunge North America (Bunge), a corporation. You inform us that the present grain elevator facility is wholly within an M-3 zoning district (heavy manufacturing), and Bunge is requesting that a portion of its adjacent property be rezoned from R-1A (single-family residential detached district) to M-1 (light manufacturing and industrial district). You tell us that this rezoning would allow a rail track expansion by adding additional spurs on such property which is owned by Bunge.
As you have informed us, in the major zoning ordinance of St. Charles Parish, language for "Use Regulations" under the classification of M-3 Heavy Manufacturing reads as follows:
 "a. building or land shall be used only for grain elevators and associated milling operations including uses related to the principal use."
You further tell us that during the public hearing, several members of the public raised the following question (which is the same legal question the St. Charles Parish Council would like answered in this opinion request): *Page 2 
 "Is the rail track expansion, consisting of additional spurs, used to deliver grain to the existing facility, considered a `Use related to the principal use', which would require that these spurs be located in a M-3 zoning district or covered under M-1 number (25) railroad freight terminals, switching and classification yards, repair shops, roundhouse, power houses and fueling, sanding and watering stations?"
Your reference to an M-1 zoning district use is a reference to certain provisions also contained in the major zoning ordinance, in pertinent part, as follows:
"[I]M-1 Light manufacturing and industry district:
 "1. Use Regulations: A building or land may be used for the following purposes if in accordance with the special provisions outlined below.
 "a. A building or land shall be used only for the following purposes:
 * * * "(25) Railroad freight terminals, switching and classification yards, repair shops, roundhouse, power houses and fueling, sanding and watering stations.
 * * *"
These are the provisions that we are asked to interpret in light of the recent proposal to change zoning in order to allow Bunge to construct and operate rail spurs on its property adjacent to its existing grain elevator facility.
After we received the opinion request, we were asked to accept legal briefs and memoranda on the issue from several parties, including some members of the public and legal counsel for the Bunge corporation. We agreed to accept these briefs and memoranda and did so. They were in the form of letters but their content was of such legal material. We truly appreciate the argument on facts and law and the thoughtful references to authority contained in these briefs. We must now decide the question.
In interpreting any legislative provision, the Legislature, through guiding statutes, and the Supreme Court of Louisiana, as the ultimate interpreter of legislation, have established certain principles for legislative construction. Some pertinent principles of statutory interpretation are as follows: *Page 3 
 "Legislation is the solemn expression of the legislative will; thus, the interpretation of legislation is primarily the search for the legislative intent. Hutchinson v. Patel, 93-2156 (La. 5/23/94); 637 So.2d 415. When a law is clear and unambiguous, and its application does not lead to absurd consequences, it shall be applied as written, with no further interpretation made in search of the legislative intent. La.Civ. Code art. 9; Daigrepont v. Louisiana State Racing Comm'n, 95-0539 (La.App. 4 Cir. 10/26/95), 663 So.2d 840. The starting point for interpretation of any statute is the language of the statute itself. Touchard v. Williams, 617 So.2d 885
(La. 1993)."
Cat's Meow, Inc. v. City of New Orleans, 1998-0601 (La. 10/20/98), p. 15;720 So.2d 1186, 1198. See also Detillier v. Kenner Regional Med.Ctr., 2003-3259 (La. 7/6/04), 877 So.2d 100; Moss v. State, 2005-1963 (La. 4/4/06), 925 So.2d 1185. Moreover,
 "The meaning and intent of a law is determined by considering the law in its entirety and all other laws on the same subject matter and by placing a construction on the law that is consistent with the express terms of the law and with the obvious intent of the legislature in enacting the law. SWAT 24 Shreveport Bossier, 2000-1695 at p. 11, 808 So.2d at 302; Succession of Boyter, 99-0761 at p. 9, 756 So.2d at 1129. A statute must be applied and interpreted in a manner that is logical and consistent with the presumed purpose and intent of the legislature. Id.
 "Further, it is presumed that every word, sentence, or provision in a law was intended to serve some useful purpose, that some effect is to be given to each such provision, and that no unnecessary words or provisions were employed. Sultana Corporation v. Jewelers Mutual Insurance Company, 03-0360, p. 9 (La. 12/3/03), 860 So.2d 1112,_119. As a result, courts are bound, if possible, to give effect to all parts of a statute and to construe no sentence, clause or word as meaningless and surplusage if a construction giving force to, and preserving, all words can legitimately be found. St. Martin Parish Police Jury v. Iberville Parish Police Jury, 212 La. 886, 33 So.2d 671, 676
(1947); State v. Fontenot, 112 La. 628, 36 So. 630, 634
(1904). Finally, it is presumed that the legislature acts with full knowledge of well-settled principles of statutory construction. Sultana Corporation, 03-0360 at p. 9, 860 So.2d at 1119."
Moss v. State, supra, pp. 15-16, 925 So.2d at 1196.
As the cases above show, including those cases cited within the quotes, these same principles of statutory interpretation apply equally as well to local governmental ordinances as they do to state statutes. *Page 4 
We think that the St. Charles Parish zoning ordinances are sufficiently consistent and unambiguous. We think that, by saying that a building or land shall be used only for grain elevators and associated milling operations including uses related to the principal use, the M-3 "Use Regulations" are allowing the related uses in addition to the principal use and are not limiting or prohibiting them by the employment of the word "only" in the first part of the quoted regulation. We also think that the mere allowance of related uses to principal use in the M-3 zoning regulation does not mandate the classification of the M-3 zoning district for an area of property on which is conducted a distinct and isolated activity that is expressly and specifically covered by another zoning classification — in this case, an M-1 zoning classification for the railroad spurs. Otherwise, the part of the ordinance governing the M-1 zoning classification would be interpreted in such a manner as to be meaningless in the circumstance, and such an interpretation is in violation of the principles set forth in law and jurisprudence for the interpretation of this legislation. In conclusion, it is our opinion that the St. Charles Parish Council could, as a matter of law, validly enact the recent proposed ordinance requesting an M-1 zoning district for simply rail spurs.
Please be advised that this opinion addresses itself only to the legality of the ordinance being proposed before the St. Charles Parish Council and not to the legislative merits of the ordinance itself. Nearby residents appear to have a possibly understandable fear that the Bunge corporation is going to conduct, within the M-1 zoning district, other activity that would require an M-3 zoning classification. In its brief to the attorney general, Bunge, through its attorneys, stated, "The area to be rezoned will not be used for grain storage or for the on-loading or off-loading of grain. It is solely an area in which to store railroad cars. (Emphasis in original.)" Indeed, this opinion hinges on the fact that Bunge is going to use the property zoned M-1 strictly for railroad spurs and the like, to which the part of the zoning ordinance dealing with the M-1 classification expressly and specifically refers. Administrative staff of the parish has already recommended approval of the ordinance, presumably because, as they indicated in their report, they thought that the deference otherwise paid to single-family residential development was not well-placed as it was not happening anyway and would not happen under the given circumstances and because they believed that an important industry and employer in the parish demonstrated the need for the additional railroad spurs. The parish council will have to take all of these and other factors into consideration when passing on the legislative merits of the ordinance. *Page 5 
We trust that this opinion has adequately answered your request, but if you have any further questions on this matter, please do not hesitate to ask them of us. With warmest regards, we remain
 Yours very truly,
 JAMES D. "BUDDY" CALDWELL
 ATTORNEY GENERAL
 By: __________________
 THOMAS S. HALLIGAN
 Assistant Attorney General
 JDC/TSH/sfj
 cc: Michael H. Rubin (McGlinchey Stafford)
 Raoul Laurent, Sr.
 Raous Laurent, Jr.