GUIDRY, Justice,
dissents and assigns reasons.
hi respectfully dissent from the majority’s reversal of the trial court’s ruling. I would instead affirm the ruling of the trial court. In my view, the failure of the defendants to file a joint petition as required by the dictates of La. C.C. art. 2329 results in an absolute nullity as defined by La. C.C. art. 2030.
It is undisputed that “[w]hen a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no *304 further interpretation may be made in search of the intent of the legislature.” La. C.C. art. 9. Further, it is presumed that every word, sentence, or provision in a law was intended to serve some useful purpose, that some effect is to be given to each such provision, and that no unnecessary words or provisions were employed. Sultana Corp. v. Jewelers Mutual Ins. Co., 03-0360, p. 9 (La. 12/3/03), 860 So.2d 1112, 1119. “As a result, courts are bound, if possible, to give effect to all parts of a statute and to construe no sentence, clause or word as meaningless and surplusage if a construction giving force to, and preserving, all words can legitimately be found.” Watkins v. Exxon Mobil Corp., 13-1545 (La. 5/7/14), 145 So.3d 237, 243 (citing St. Martin Parish Police Jury v. Iberville Parish Police Jury, 212 La. 886, 33 So.2d 671, 676 (1947)).
At issue, La. C.C. art. 2329 provides that spouses may enter into a matrimonial agreement during marriage, but “only upon joint petition and a finding by the court |2that this serves [the parties] best interests and that they understand the governing principles and rules.” (Emphasis added.) The majority concedes the words of this provision are “clear and unambiguous” insofar as it requires the filing of a joint petition by the spouses to terminate the matrimonial regime. However, because every word or phrase of a stature must be afforded its full meaning, the majority, in my view, goes astray in its analysis by effectively eliminating the mandatory element of the filing of a “joint” petition in reaching a result that I find was not intended by the legislature.
The rules of statutory construction are designed to ascertain and enforce the intent of the legislature. Stogner v. Stogner, 98-3044, p. 5 (La. 7/7/99), 739 So.2d 762, 766. The meaning and intent of a law are determined by considering the law in its entirety and all other laws on the same subject matter and by placing a construction on the law that is consistent with the express terms of the law and with the obvious intent of the legislature in enacting the law. SWAT 24 Shreveport Bossier, 00-1695, p. 11, 808 So.2d 294, 302 (La. 6/29/01). Applying these precepts and guidelines to the instant case, I conclude the legislature intended for a strict application of La. C.C. art, 2329. The dictates of the codal provision are not mere policy concerns, but rather a protective mandate made part of a statutory enactment that restricts the establishment of a separation of property regime confected during the marriage. Muller v. Muller, 10-540 (La. App. 5 Cir. 6/29/11), 72 So.3d 364, 368. The codal requirement that any party entering into an agreement that modifies or terminates the matrimonial regime after marriage must do so by joint petition is without exception. The given facts, or those of any other case, cannot serve to vitiate the requirements of La. C.C. art. 2329.
Because I believe the dictates of La. C.C. art. 2329 to be clear and dispositive, U further disagree with the majority’s conclusion that the failure to file a joint petition rendered the matrimonial agreement a relative nullity under La. C.C. art. 2013 because it is “a rule intended for the protection of private parties,” namely, the defendants. Indisputably, the dictates of La. C.C, art. 2329 are for the protection of the married couple. Nevertheless, the consequences of entering into a contract that terminates an existing matrimonial regime cannot be viewed in a vacuum, because termination of an existing matrimonial regime clearly may have a rippling effect upon a larger class of persons and institutions by virtue of the laws of, including but not limited to, ownership, heritable rights, and obligations. Thus, I would find that the defendants’ failure to comply with the mandatory requirements of La. C.C. art. *305 2329 rendered the act absolutely null because “it violate[d] a rule of public order” as contemplated by La. C.C. art. 2030. Such a finding is best exemplified under the given facts. By their own admission, the defendants sought to terminate the ■community regime so as to avoid a multimillion dollar judgment rendered against Mr. Burger in favor of the plaintiff.
Finally, without conceding my position that the ruling of the trial court should be affirmed, the case should be remanded to the trial court for consideration of the merits of the plaintiff’s revocatory action in light of the majority’s position that the defendants’ failure to file a joint petition resulted in a relative nullity. The plaintiff timely filed its action in accordance with La. C.C. art. 2376, which affords a creditor the opportunity to assert the nullity of a judgment to the extent it has been prejudiced. The tenor of the litigation in the trial court shifted from the merits of the revocatory action to consideration of the issues concerning the validity of the marital agreement. A remand to the trial court would afford the plaintiff the opportunity to litigate fully its claims of fraud under La. C.C. art. 2376.