GUIDRY, Justice.
liWe granted the writ application to answer the question of whether the one-year time period for instituting a survival action pursuant to La. Civ.Code art. 2315.1, particularly as amended by Acts 1986, No. 211, § 2, is prescriptive, within the meaning of La. Civ.Code art. 3447, or is per-emptive, within the meaning of La. Civ. Code art. 3458. The trial court granted the defendants’ peremptory exceptions of peremption and no cause of action. The trial court found the plaintiffs survival action was extinguished because it was perempted, having been filed more than one year from the date of the decedent’s death. The court of appeal reversed, finding the one-year period for bringing the survival action is a period of liberative prescription rather than a period of per-emption. The court of appeal then remanded the case to the trial court for further proceedings. For the reasons set forth below, we affirm the court of appeal’s decision.
FACTS AND PROCEDURAL HISTORY
James Hicks, Sr., the father of the plaintiff, Patricia Watkins, died on December 27, 1986. On June 17, 2011, the plaintiff filed a survival action pursuant to La. Civ.Code. art. 2315.1 and a wrongful death action pursuant to La. Civ.Code art. 2315.2 against numerous defendants, including various oil | ^companies and a pipe-cleaning contractor.[1] The plaintiff alleged that her father was exposed to naturally occurring radioactive material (more commonly referred to as “NORM”) at the facility where the contractor cleaned pipe used by the oil company defendants. At this facility, the plaintiff alleged, her father was exposed to dust containing radioactive material, which resulted in injury to him and, ultimately, his death. The plaintiff claimed that, by operation of contra non valentem, she had neither constructive nor actual notice of her causes of action until June 22, 2010, and thus her petition for damages was timely filed within one-year.[2]
*239 The defendant oil companies filed various exceptions, including the peremptory exceptions of prescription, peremption, and no right of action. La.Code Civ. Proc. art. 927A. Among other exceptions, they alleged the one-year time period for instituting a survival action set forth in La. Civ. Code art. 2815.1(A) is one of peremption, which is not susceptible to renunciation, interruption, or suspension, see La. Civ. Code art. 3461, nor is it susceptible to the doctrine of contra non valentem. See State Through Div. of Admin, v. McInnis Bros. Const., 97-0742 (La.10/21/97), 701 So.2d 937. Because the suit was filed more than one year from the date of the decedent’s death, the defendants asserted the suit was perempted and should be dismissed. The trial court sustained the exceptions of peremption and no cause of action.
|sThe court of appeal reversed and remanded. Watkins v. Exxon Mobil Corporation, 12-0477 (LaApp. 4 Cir. 5/29/13), 117 So.3d 548. The court of appeal found the one-year period for bringing a survival claim is prescriptive, not peremptive, relying in large part on the fact that the 1986 amendment clearly and unambiguously describes the time period as prescriptive: “We find the explicit language in Article 2315.1(C), describing the delay as a ‘prescriptive period,’ is the ‘best evidence’ that the legislature intends what it says in the codal article itself.” Id., p. 7, 117 So.3d at 553. The court of appeal, also distinguished its prior jurisprudence, namely Succession of Roux v. Guidry, 182 So.2d 109 (LaApp. 4 Cir.1966), which had held that the time period set forth in former Art. 2315 was peremptive, on the basis that that decision was restricted to a wrongful death action, and was later overruled by Guidry v. Theriot, 377 So.2d- 319 (La.1979), which held that the time period for bringing a wrongful death action was the one-year prescriptive period for instituting a delictual action under La. Civ. Code art. 3462, rather than the one-year period for instituting a survival action set forth in Art. 2315. The court of appeal further distinguished conflicting decisions of the appellate courts on the basis that those courts either relied on what it characterized as dicta in Guidry v. Theriot, were not confronted with the precise issue of the nature of the time limitation for a survival action, relied on decisions that preceded the legislative amendment of Art. 2315.1 in 1986, or failed to acknowledge the language in the 1986 amendment. Id., pp. 8-12, 117 So.3d at 554-56 (discussing Barber v. Employers Ins. Co. of Wausau, 11-0357 (LaApp. 1 Cir. 6/28/13), 97 So.3d 454; Adams v. Asbestos Corp., 41,028 (La. App. 2 Cir. 5/17/06), 930 So.2d 342; and Courtland v. Century Indem. Co., 00-333 (LaApp. 5 Cir. 10/18/00), 772 So.2d 797). The concurring judge below found the legislature had changed the |4law in 1986 when it amended the statute to characterize the time period as prescriptive.
We granted the defendants’ writ application to determine the correctness of the lower court’s decision. Watkins v. Exxon Mobil Corporation, 13-1545 (La.11/08/13), 129 So.3d 522.
LAW and DISCUSSION
We commence with a brief review of the survival and wrongful death actions in Louisiana. At common law, there were two well established rules: personal tort actions abated upon the death of the person of the victim and the death of a person did not create a cause of action on behalf of the living person who was injured by reason of the death. See H. Alston Johnson, III, “Death on the Calíais Coach: The Mystery of Louisiana Wrongful Death and Survival Actions,” 37 La. L.Rev. 1 (1976). Eventually, the former rule was changed by statute to permit survival of the victim’s *240 action for damages, despite the death of the victim. Id., p. 5 (citing Wex Malone, “The Genesis of Wrongful Death,” 17 Stan. L.Rev. 1043 (1965)). The latter rule was changed in 1846 in England to grant a remedy for wrongful death in favor of certain named beneficiaries. Id. These statutorily-created rights, however, were considered derogations from the common law, and English and American courts were constrained to apply them strictly.
In Louisiana, however, the essence of our civilian tradition is explicitly set forth in Article 1 of the Civil Code: “The sources of law are legislation and custom.” The source of our tort law comes from Article 1382 of the Code Napoleon (1804), and was first set forth in Article 2294 of the Louisiana Civil Code of 1825: “Every act whatever of man, that causes damage to another, obliges him, by whose fault it happened, to repair it.” Although French courts had found | ¡¡authority for the wrongful death action in this language, Louisiana courts, largely relying on common law sources, discerned no such authority for either the survival action or the wrongful death action. See Levy v. State Through Charity Hosp. of La., 253 La. 73, 216 So.2d 818 (1968) (citing Hubgh v. New Orleans & Carrollton R.R. Co., 6 La.Ann. 495 (1851); Hermann v. New Orleans & Carrollton R.R. Co., 11 La.Ann. 5 (1856)); see also Comment, “Wrongful Death: Prescription? Peremption? Confusion!,” 39 La. L.Rev. 1239, 124CM1. The legislature, by Act 223 of 1855, created a so-called survival action and set forth the time period for bringing the action, adding to the language of Article 2294: “... the right of this action shall survive in cases of death in favor of the minor children and widow of the deceased or either of them, and in default of these in favor of the surviving father and mother or either of them, for the space of one year from the death.” See Levy, 253 La. at 76, 216 So.2d at 819.
This survival action was continued in the Revised Civil Code of 1870, Article 2315 of which provided as follows:
Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it; the right of this action shall survive in case of death in favor of the minor children and widow of the deceased or either of them, and in default of these in favor of the surviving father and mother or either of them, for the space of one year from the death.
The wrongful death action, allowing recovery for damages occasioned certain beneficiaries by the death of the deceased resulting from the fault of another, was added by amendment of Article 2315 by Act 71 in 1884, see Levy, 253 La. at 77, 216 So.2d at 819. Article 2315 then provided:
Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it; the right of this action shall survive in case of death in favor of the minor children or widow of the deceased, or either of them, and in default of these, in favor of the surviving father and mother, or either of them, for the space of one year from the death. The survivors above mentioned | fimay also recover the damages sustained by them by the death of the parent or child, or husband or wife, as the case may be.
Apparently in response to several judicial decisions, the legislature amended and reenacted Article 2315 by La. Acts 1960, No. 30, § 1, in conjunction with the adoption of the Code of Civil Procedure, to specify that the right to recover damages to property is inherited by an obligee’s heirs upon his death and, notably, that the survival and wrongful death actions, also deemed property rights, are inherited by the survivor’s heirs upon the survivor’s *241 death, whether or not the survivor had instituted suit prior to his death. See Guidry v. Theriot, 377 So.2d at 322-25; see also Johnson, supra, pp. 21-23; see also, e.g., Dumas v. U.S. Fidelity & Guaranty Co., 241 La. 1096, 134 So.2d 45 (1961) (holding the survival action abated at the death of the beneficiary). The article then provided in pertinent part:
Article 2315. Liability for acts causing damage; survival action
Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.
The right to recover damages to property caused by an offense or quasi offense is a property right which, on the death of the obligee, is inherited by his legal, instituted, or irregular heirs, subject to the community rights of the surviving spouse.
The right to recover all other damages caused by an offense or quasi offense, if the injured person dies, shall survive for a period of one year from the death of the deceased in favor of (1) the surviving spouse and child or children of the deceased, or either such spouse or such child or children; (2) the surviving father and mother of the deceased, or either of them, if he left no spouse or child surviving; and (3) the surviving brothers and sisters of the deceased, or any of them, if he left no spouse, child, or parent surviving. The survivors in whose favor this right of action survives may also recover the damages which they sustained through the wrongful death of the deceased. A right to recover damages under the provisions of this paragraph is a property right which, on the death of the survivor in whose favor the right of action survived, is inherited by his legal, instituted, or irregular heirs, whether suit has been instituted thereon by the survivor or not.
|7In 1982, Article 2315 was amended by La. Acts 1982, No. 202, to add a paragraph specifying that recoverable damages could include loss of consortium, service and society, whether or not the injured person dies. See, e.g., Ferguson v. Burkett, 454 So.2d 413 (LaApp. 3rd Cir.1984). And in 1984, the legislature by Acts 1984, No. 397, § 1, amended the article to provide for recovery of expenses and monetary obligations incurred by the injured person.
Although it now appears well-settled that the survival action and the wrongful death action are separate and distinct causes of action, see Walls v. American Optical Corp., 98-0455 (La.9/8/99), 740 So.2d 1262, 1273, that was not always the case. In Guidry v. Theriot, the court recognized the confusing line of jurisprudence and attendant commentary in this regard and held that, although both actions arise from a common tort they are, nevertheless, separate and distinct because each arises at a different time. 377 So.2d at 321-22. The court explained:
The survival action comes into existence simultaneously with the commission of the tort and is transmitted to the beneficiaries upon the victim’s death. The wrongful death action does not arise until the victim dies. Each right addresses itself to the recovery of damages for totally different injuries and losses. The survival action permits recovery only of the damages suffered by the victim from the time of injury to the moment of death. The wrongful death action is intended to compensate the beneficiaries for compensable injuries suffered from the moment of death and thereafter.
377 So.2d at 322; see also Taylor v. Giddens, 618 So.2d 834, 840 (La.1993).
Apparently recognizing the jurisprudential distinction between the two actions, *242 the legislature in 1986 amended Article 2315 to separate out the survival and wrongful death actions. La. Acts 1986, No. 211, severed the provisions dealing with the survival action and the wrongful death action from Article 2315 and transferred the language into new articles: La. Civ.Code arts. 2315.3 (the survival action) and 2315.4 (the wrongful death action). Article 2315.3 was [ ^redesignated as Article 2315.1 pursuant to the statutory revision authority of the Louisiana State Law Institute to provide as follows:
A. If a person who has been injured by an offense or quasi-offense dies, the right to recover all damages for injury to that person, his property or otherwise, caused by the offense or quasi-offense, shall survive for a period of one year from the death of the deceased in favor of:
(1) The surviving spouse and child or children of the deceased, or either the spouse or the child or children;
(2) The surviving father and mother of the deceased, or either of them if he left no spouse or child surviving; and
(3) The surviving brothers and sisters of the deceased, or any of them, if he left no spouse, child, or parent surviving.
B. In addition, the right to recover medical expenses and funeral expenses only, may be urged by the decedent’s succession representative in the absence of any class of beneficiary set out in the preceding Paragraph.
C. The right of action granted under this Article is heritable, but the inheritance of it neither interrupts nor prolongs the prescriptive period defined in this Article.
D. As used in this Article, the words “child”, “brother”, “sister”, “father”, and “mother” include child, brother, sister, father, mother by adoption, respectively. [Emphasis supplied.]
This is the version of the statute that was in effect at the time the plaintiffs father died. As did the lower court, we find this version is the law applicable to the plaintiffs right to assert the cause of action at issue in this case. Although we acknowledge our jurisprudence that the substantive law governing the decedent’s right to recover damages from an offense or quasi-offense under La. Civ.Code art. 2315, i.e., his cause of action in tort, is that which was in effect at the time of the alleged tort, e.g., Walls v. American Optical, supra, the survivor’s right to assert the claim for damages incurred by her father, which is in the nature of an inherited right, certainly does not come into existence until the moment of his death, |aassuming that either he has not asserted a claim for damages prior to his death or that his claim had not prescribed prior to his death.
Having determined the applicable version of Article 2315.1(C), we turn to whether the one-year time period for asserting that action is prescriptive or per-emptive. Because what the legislature says in the text of a statute is considered the best evidence of legislative intent, State v. Williams, 00-1725, p. 13 (La.11/28/01), 800 So.2d 790, 800, we begin with an examination of the language of La. Civ.Code. art. 2315.1(C). See also Borel v. Young, 07-0419 (La.11/27/07), 989 So.2d 42, 59. As noted above, prior to the 1986 enactment of the article, there was jurisprudence holding that the time limitation for bringing the survival action was a one-year peremptive period. However, as previously explained that issue was far from settled, and had never been definitively answered by this court. Accordingly, we must determine what the legislature intended when in Art. 2315.1(C) it described the time limitation for asserting a survival *243 cause of action set forth in Art. 2815.1(A) as “prescriptive.”
When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the Legislature. La. Civ.Code art. 9; Pumphrey v. City of New Orleans, 05-979, p. 10 (La.4/4/06), 925 So.2d 1202, 1209. Moreover, the words of a law must be given their generally prevailing meaning. La. Civ.Code art. 11; Pumphrey, 05-979 at p. 11, 925 So.2d at 1209-10. In determining the meaning of Article 2815.1(C), we look to the applicable rules of statutory construction, which were recently set out by this court as follows:
The fundamental question in all cases of statutory interpretation is legislative intent. SWAT 21 Shreveport Bossier, Inc. v. Bond, 2000-1695,10 p. 11 (La.6/29/01), 808 So.2d 294, 302; Succession of Boyter, 99-0761, p. 9 (La.1/7/00), 756 So.2d 1122, 1128. The rules of statutory construction are designed to ascertain and enforce the intent of the legislature. Id.; Stogner v. Stogner, 98-3044, p. 5 (La.7/7/99), 739 So.2d 762, 766.
The meaning and intent of a law is determined by considering the law in its entirety and all other laws on the same subject matter and by placing a construction on the law that is consistent with the express terms of the law and with the obvious intent of the legislature in enacting the law. SWAT 24 Shreveport Bossier, 2000-1695 at p. 11, 808 So.2d at 302; Succession of Boyter, 99-0761 at p. 9, 756 So.2d at 1129. A statute must be applied and interpreted in a manner that is logical and consistent with the presumed purpose and intent of the legislature. Id.
Further, it is presumed that every word, sentence, or provision in a law was intended to serve some useful purpose, that some effect is to be given to each such provision, and that no unnecessary words or provisions were employed. Sultana Corporation v. Jewelers Mutual Insurance Company, 03-0360, p. 9 (La.12/3/03), 860 So.2d 1112, 1119. As a result, courts are bound, if possible, to give effect to all parts of a statute and to construe no sentence, clause or word as meaningless and surplusage if a construction giving force to, and preserving, all words can legitimately be found. St. Martin Parish Police Jury v. Iberville Parish Police Jury, 212 La. 886, 33 So.2d 671, 676 (1947); State v. Fontenot, 112 La. 628, 36 So. 630, 634 (1904). Finally, it is presumed that the legislature acts with full knowledge of well-[settled] principles of statutory construction. Sultana Corporation, 03-0360 at p. 9, 860 So.2d at 1119.
Colvin v. Louisiana Patient’s Compensation Fund Oversight Bd., 06-1104 pp. 6-7 (La.1/17/07), 947 So.2d 15,19-20.
In addition to the above judicial principles, which are guides to determine the intent of the legislature, the legislature has enacted rules for the construction of statutes in the provisions of the revised statutes. The following are pertinent to this case. La.Rev.Stat. 1:3 provides:
Words and phrases shall be read with their context and shall be construed according to the common and approved usage of the language. Technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning.
|nApplying those precepts and guidelines to the instant case, we must conclude the legislature intended to provide that the time limitation for asserting the survival action is a one year period of *244 liberative prescription. There can be little doubt that the legislature is well aware of the distinction between a period of libera-tive prescription and a period of peremption. See, e.g., La.Rev.Stat. 9:5604(B), governing actions for professional accounting liability: “The one-year and three-year periods of limitation provided in Subsection A of this Section are peremptive periods within the meaning of Civil Code Article 3458 and, in accordance with Civil Code Article 3461, may not be renounced, interrupted, or suspended.” Certainly the legislature could have deemed the time period one of peremption had it desired to do so. See Borel v. Young, supra. The legislature must have intended the time period to be one of liberative prescription, given that the term “prescriptive period” has a well-settled meaning in our law and jurisprudence. This court has recognized there are policy considerations in favor of strictly limiting the time period for the assertion of a survival action. See Guidry v. Theriot, 377 So.2d at 326 (because the beneficiary is in effect the recipient of a bonus year to bring the victim’s action, it is reasonable that the legislature would be concerned about the interval during which a potential defendant might be vulnerable to a survival action and therefore foreclosed the issue by providing an express time limitation). However, the policy considerations weigh just as equally in favor of applying the legislature’s language describing the time limitation as one of prescription, given that the decedent’s actual tort claim, as well as the survivor’s wrongful death claim, are both governed by one-year periods of liberative prescription. In the context of the time limitations for those causes of Inactions, we do not find the legislature’s designation of the time limitation as prescriptive leading to absurd results.
CONCLUSION
For the reasons set forth above, we affirm the judgment of the court of appeal holding that the one-year time limitation for asserting the survival action under La. Civ.Code art. 2315.1(A) is a period of liberative prescription rather than a period of peremption. See La. Civ.Code art. 2315.1(C). The case is remanded to the trial court for further proceedings.
AFFIRMED; CASE REMANDED TO THE DISTRICT COURT.
VICTORY, Justice, dissents and assigns reasons.

. The oil company defendants include Exxon Mobil Corporation, ExxonMobil Oil Corporation, Humble Inc., Chevron USA, Inc., Shell Oil Company, Marathon Oil Company, OXY USA, Inc., individually and as successor to Placid Oil Company, and BP America Production Company, individually and as successor to Amoco Production Company. The pipe cleaning contractor was Alpha Technical Services, Inc.

. Contra non valentem agere nulla currit praescriptio is the judicially-recognized doctrine whereby the running of prescription is suspended under certain conditions. See, e.g., Carter v. Haygood, 04-0646 (La. 1/19/05), 892 So.2d 1261.