# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## CA 18-980


**KEVON BROOKS, ET AL.**

**VERSUS**

**RACHELLE MEAUX, M.D.**



**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-2017-4583
HONORABLE EDWARD B. BROUSSARD, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## JOHN E. CONERY
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Shannon J. Gremillion, and John E. Conery, Judges.




**REVERSED AND REMANDED.**

**Maria Bridget Glorioso**
**The Glorioso Law Firm**
**2716 Athania Parkway**
**Metairie, Louisiana  70002**
**(504) 569-9999**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    **Kevon Brooks**
    **Kevon Brooks, on behalf of Alice Faye Brooks**
    **Kevon Brooks, on behalf of Maleah S. Brooks**

**James J. Hautot, Jr.**
**Michelle R. Judice**
**Judice & Adley**
**Post Office Drawer 51769**
**Lafayette, Louisiana  70505-1769**
**(337) 235-2405**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Rachelle Meaux, M.D.**

**John Elliott Baker**
**Special Assistant Attorney General**
**Irving Hirsch Koch**
**Assistant Attorney General**
**321 North Vermont Street, Suite 208**
**Covington, Louisiana  70433**
**(985) 867-9068**
**COUNSEL FOR INTERVENOR/APPELLEE:**
    **Attorney General, State of Louisiana**

**CONERY, Judge.**

The plaintiff filed this medical malpractice action seeking damages associated with the pregnancy-related death of his wife. The defendant physician filed an exception of prescription after the matter was initially filed in a court of improper venue and subsequently transferred to the appropriate district. The trial court sustained the exception, dismissing the plaintiff's claims as to his wife. The plaintiff appeals. For the following reasons, we reverse and remand.

### FACTS AND PROCEDURAL HISTORY

This matter stems from the death of Alice Brooks, who collapsed in her home in the early morning hours of October 11, 2013, and who died in the thirty-eighth week of her pregnancy after being taken to the emergency room. The twenty-four-year old's cause of death was determined to be Peripartum Cardiomyopathy.[1] Although not the subject of this appeal, Mrs. Brooks' child, Maleah Brooks, was delivered by caesarean section, but died weeks after delivery.

Kevon Brooks, Mrs. Brooks' husband and Maleah's father, instituted this matter against Dr. Rachelle Meaux, Mrs. Brooks' obstetrician/gynecologist. Pertinent to the prescription issue on appeal, Mr. Brooks filed a medical malpractice complaint with the Louisiana Patient's Compensation Fund (PCF) on October 10, 2014, requesting a Medical Review Panel (MRP). He alleged that Dr. Meaux deviated from the applicable standard of care by the "failure to properly diagnose, treat/monitor, perform additional testing[,] or refer" Mrs. Brooks for further testing. That deviation, Mr. Brooks asserted, resulted in Mrs. Brooks' death.

---

[1] A Plaintiff's exhibit filed into the record reflects that: "Peripartum cardiomyopathy is a rare disorder in which a weakened heart is diagnosed within the final month of pregnancy or within five months after delivery."

The MRP rendered its decision on June 13, 2016, with notice provided to Mr. Brooks on July 20, 2016.[2] Mr. Brooks, in turn, filed his initial petition in East Baton Rouge Parish on October 5, 2016, naming Dr. Meaux as the defendant in this medical malpractice claim. He alleged that Mrs. Brooks presented to Dr. Meaux on the day before her death, complaining of "shortness of breath over the last several days, congestion with cough, swelling of legs down to ankles and feet, and a 5 lb. weight gain over the last 6 days." Mr. Brooks further alleged that Mrs. Brooks "was sent home where, in the early morning hours of October 11, 2013, [she] suffered a cardiac arrest." He began CPR and continued that effort until paramedics arrived. Mrs. Brooks was taken by ambulance to Women's and Children's hospital in Lafayette, where Maleah was delivered via caesarean section. Mrs. Brooks was pronounced dead shortly thereafter. As in the complaint before the PCF, Mr. Brooks asserted that Dr. Meaux was negligent in her failure to diagnose and treat Mrs. Brooks' condition.[3]

Although filed on October 5, 2016, Mr. Brooks' petition was not served on Dr. Meaux until November 16, 2016. Dr. Meaux subsequently filed an exception of improper venue, noting that her domicile, residence, and medical practice were in Lafayette Parish as was the entirety of the subject medical care. Denying that East Baton Rouge Parish was a parish of proper venue, Dr. Meaux requested that the claim against her be dismissed. Mr. Brooks responded by filing a motion to transfer the matter to Lafayette Parish. Following a hearing, the trial court judge

---

[2] Although the MRP opinion is not contained within the appellate record, the parties indicate that the decision was in favor of Dr. Meaux.

[3] By the petition, Mr. Brooks also questioned the constitutionality of "[La.]R.S. 40:1231.8 *et seq.*, and all related statutes limiting the liability of healthcare providers[.]" Following the intervention of the State of Louisiana, through the Attorney General, the trial court entered summary judgment in favor of the State and dismissed the plaintiff's claim of unconstitutionality. That ruling has not been appealed and is not before us.

granted the exception of improper venue but denied the request for dismissal. The resulting May 25, 2017 judgment instead transferred the matter to Lafayette Parish.

Upon transfer, Dr. Meaux filed the exception of prescription now at issue and asserted that the date of Mrs. Brooks' death, October 11, 2013, commenced the one-year prescriptive period applicable to this medical malpractice matter. Although filed within the subsequent one-year period, the request for the MRP was not filed until October 10, 2014. Dr. Meaux contended that this request was only "one (1) day prior to the one-year prescriptive period lapsing" on the instant claim. *See* La.R.S. 40:1231.8(A)(2)(a) ("The filing of the request for a review of a claim shall suspend the time within which suit must be instituted, . . . until ninety days following notification by certified mail, . . . to the claimant or his attorney of the issuance of the opinion of the medical review panel.").

Thereafter referencing July 20, 2016, as the date she received the MRP opinion, Dr. Meaux urged that Mr. Brooks "had ninety (90) days, in addition to one (1) day still remaining in the prescriptive period, to file a lawsuit in a court of proper venue[.]" Dr. Meaux thus alleged that Mr. Brooks had through October 19, 2016, to file this matter in a court of proper venue.

While suit was filed on October 5, 2016, Dr. Meaux pointed out that it was filed in an improper venue as evidenced by the granting of the exception by the court in East Baton Rouge Parish, who transferred the case to Lafayette Parish. She further contended that prescription was not interrupted until she was actually later served with that suit on November 16, 2016. Louisiana Civil Code Article 3462 provides: "If action is commenced in an incompetent court, or in an improper venue, prescription is interrupted only as to a defendant served by process within the prescriptive period." As that date of actual service was beyond

the extended prescription date of October 19, 2016, Dr. Meaux claimed in her exception that the matter was prescribed.

In opposition, Mr. Brooks chiefly questioned Dr. Meaux's suggestion that prescription began on the date of Mrs. Brooks' death. He contended instead that prescription began to run on the date that he became aware of his cause of action. Mr. Brooks identified that date as his receipt of the December 19, 2013 autopsy report, and, pursuant to that argument, he had one year from December 19, 2013 for the institution of suit. Having requested the MRP review on October 10, 2014, Mr. Brooks urged he had "approximately an additional 70 days beyond the 90 day post Medical Review Panel notification [pursuant to La.R.S. 40:1231.8(A)(2)(a)], for the sheriff to effect service on defendant." (Emphasis omitted.) Accordingly, Mr. Brooks asserted that he "did not have just one day left on the one year statu[t]e, but some 70 days under the discovery rule to have defendant served post-initial filing, or until December 27, 2016[.]" Mr. Brooks urges that personal service on Dr. Meaux on November 16, 2016, was well within the prescriptive period.

Following an evidentiary hearing, at which the parties' presented their respective arguments regarding the commencement of the prescriptive period, the trial court ruled in favor of Dr. Meaux. Though no oral or written reasons were assigned, the trial court cryptically indicated agreement with Dr. Meaux's position, finding that "it was a day late." Accordingly, the trial court sustained the exception of prescription and dismissed Mr. Brooks' claims arising out of Mrs. Brooks' death. The trial court designated the judgment as a final, appealable judgment pursuant to La.Code Civ.P. art. 1915(B).

Mr. Brooks timely appealed and assigned three errors.

4

## ASSIGNMENT OF ERRORS

1.  The trial court erred as a matter of law in holding that prescription on wrongful death and survival actions always commences running on the date of death.

2.  The trial court erred as a matter of law or, alternatively, committed manifest error, in determining that prescription on Kevon's wrongful death and survival actions commenced on the date of his wife's death, rather than on the date he received his wife's autopsy report.

3.  The trial court erred as a matter of law or, alternatively, committed manifest error, in granting Dr. Meaux's exception of prescription and dismissing Kevon's wrongful death and survival action.

## LAW AND DISCUSSION

### Standard of Review

We consider Mr. Brooks' assignments of error collectively as each addresses the correctness of the sustaining of the exception of prescription. On review, an appellate court's standard of review is dependent on whether the parties introduced evidence at the hearing on the exception. *Arton v. Tedesco*, 14-1281 (La.App. 3 Cir. 4/29/15), 176 So.3d 1125, *writ denied*, 15-1065 (La. 9/11/15), 176 So.3d 1043. If evidence was introduced, the appellate court applies the manifest error standard of review. In the event no evidence was introduced, the judgment is reviewed for legal error. *Id.* Although this matter is reviewed under the more deferential manifest error standard given the introduction of evidence, we conclude that the trial court's judgment must be reversed.

### Burden of Proof

Generally, the party advancing the exception of prescription bears the burden of proving prescription, unless the plaintiff's claim is prescribed on its face. *Bailey v. Khoury*, 04-0620 (La. 1/20/05), 891 So.2d 1268. In this latter event, the

burden shifts to the plaintiff. *Id.* A court must not find a petition prescribed on its face, however, if it was filed within a year of discovery and if "'facts alleged with particularity in the petition show that the patient was unaware of the malpractice prior to the alleged date of discovery, and the delay in filing suit was not due to willful, negligent, or unreasonable action of the patient.'" *Id.* at 1275 (quoting *Campo v. Correa*, 01-2707, p. 9 (La. 6/21/02), 828 So.2d 502, 509).

While the trial court's succinct ruling that the petition was filed "a day late" reflects a determination that the matter was prescribed on its face, such a finding does not accord with Mr. Brooks' allegation by particularized facts that he did not discover his cause of action until review of the December 19, 2013 autopsy report. It was that review, he contends, by which he correlated the cause of death with the medical treatment of his wife. Finding error for the reasons discussed below, we reverse the trial court's ruling and remand for further proceedings.

*Merits*

The parties' respective arguments regarding the commencement of the prescriptive period address the differing prescriptive periods of La.R.S. 9:5628(A), which provides, in part, that:

> No action for damages for injury or death against any physician, chiropractor, nurse, licensed midwife practitioner, dentist, psychologist, optometrist, hospital or nursing home duly licensed under the laws of this state, or community blood center or tissue bank as defined in R.S. 40:1231.1(A), whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission, or neglect, or **within one year from the date of discovery of the alleged act, omission, or neglect**; however, even as to claims filed within one year from the date of such discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect.

(emphasis added.)

As briefly referenced above, Dr. Meaux marks the October 11, 2013 death of Mrs. Brooks as the date on which prescription commenced. The request for the MRP was filed against Dr. Meaux on October 10, 2014. Dr. Meaux thus contends that one day remained on the prescriptive period at the time of filing and that prescription was suspended during the pendency of the panel proceedings. *See* La.R.S. 40:1299.31(A)(2)(a).[4] Mr. Brooks was notified of the MRP decision on July 20, 2016. Again referencing the statute, Dr. Meaux contends that Mr. Brooks thereafter had ninety days, plus the remaining one day of the initial, one-year prescriptive period. According to Dr. Meaux, Mr. Brooks had ninety-one days after the service of the MRP opinion to institute this matter. While Mr. Brooks

---

[4] Although we ultimately find this matter resolved due to the determination regarding the commencement of the prescriptive period and concentrate discussion on that issue, La.R.S. 40:1231.8(A)(2)(a) is further pertinent to the issue of the calculation of the pertinent period as it provides:

> The filing of the request for a review of a claim shall suspend the time within which suit must be instituted … until ninety days following notification, by certified mail … to the claimant or his attorney of the issuance of the opinion by the medical review panel ….

The period of suspension identified by La.R.S. 40:1231.8(A)(2)(a) is not to be counted in the prescriptive period. *See* La.Civ.Code art. 3472 ("The period of suspension is not counted toward accrual of prescription. Prescription commences to run again upon the termination of the period of suspension."). In *Guitreau v. Kucharchuk*, 99-2570, p. 6 (La. 5/16/00), 763 So.2d 575, 580, the supreme court construed La.Civ.Code art. 3472 within the context of a medical malpractice claim, explaining:

> [W]hen the ninety-day period of suspension after the decision of the medical review panel is completed, plaintiffs in medical malpractice actions are entitled to the period of time, under [La.R.S.] 9:5628, that remains unused at the time the request for a medical review panel is filed. Once a medical malpractice claim is submitted to the medical review panel, the prescriptive period is temporarily discontinued. Prescription commences to run again ninety days after the plaintiff has receive notice of the panel's decision. That is, when the ninety day period expires, the period of suspension terminates and prescription commences to run again. Once prescription begins to run again, counting begins at the point at which the suspension period originally began.

We do not further discuss the end of the period of suspension as it is uncontested that, upon acceptance of the date of discovery as to the commencement of suit as urged by Mr. Brooks, the petition timely interrupted prescription.

filed this matter on October 5, 2016, he did so in East Baton Rouge Parish. With October 5, 2016, falling within that ninety-one-day period urged by Dr. Meaux, she points out that she was not served with that suit until November 16, 2016. Further, East Baton Rouge Parish was found to be an improper venue. As such, La.Civ.Code art. 3462 provides: "If action is commenced in an incompetent court, or in an improper venue, prescription is interrupted only as to a defendant served by process within the prescriptive period."

Mr. Brooks, however, claimed that he was initially unaware that he had a potential malpractice claim against Dr. Meaux until he received the coroner's report dated December 19, 2013. He alleged by supplemental petition that Dr. Meaux and other emergency room personnel informed him after his wife had died that "they were unaware of what caused his wife's cardiac arrest" and that they would instead "have to wait for the autopsy results." As there are "numerous causes of cardiac arrest," Mr. Brooks asserted that he "could not have reasonably discovered the reasons for his wife's death until the cause of death was determined by the Coroner on [the] December 19, 2013" autopsy report. Basing his claim on this date of "discovery," Mr. Brooks alleged in the supplemental petition that upon review of both the report and "a MedLine article attached to the Autopsy Report describing the medical diagnosis of Peripartum Cardiomyopathy[,]" he "discovered for the first time the warning signs and symptoms of this diagnosis were the same ones his wife was having prior to her death." He stated he realized that Mrs. Brooks had complained to Dr. Meaux about those "same signs and symptoms prior to her cardiac arrest." He alleged that the receipt of the coroner's report and the accompanying MedLine article on December 19, 2013, was the first time he had reason to consider the involvement of malpractice. He noted that his October 10,

8

2014 request for a medical review panel indicated that "he was not made aware of the cause of his wife's death nor the cause of her cardiac arrest until he received the Autopsy Report sometime after it was finalized on 12/19/13[,]" setting forth the cause of death as Peripartum Cardiomyopathy. Given those factors, Mr. Brooks contended that prescription did not begin to run until the discovery of the cause of action on December 19, 2013.

Dr. Meaux filed into evidence the October 16, 2013 death certificate listing Peripartum Cardiomyopathy as the immediate cause of death in support of her argument that prescription had run. Dr. Meaux suggests that even if the prescriptive period did not commence at the time of death, it is notable that the death certificate completed a few days after death was sufficient under the law to incite Mr. Brooks' attention for further inquiry. This argument, however, conflates knowledge of the cause of death with knowledge of alleged tortious conduct, a distinction important under the supreme court's jurisprudence.

In support of his opposition to the exception of prescription, Mr. Brooks supplied his deposition whereby he detailed the timeline of events, including his attendance at Mrs. Brooks' final appointment with Dr. Meaux on the day before her death. He explained that Mrs. Brooks complained to Dr. Meaux of swelling and difficulty breathing at that time. He also testified that Mrs. Brooks was told that such complaints were common with first time mothers and that if problems worsened, she should report to the emergency room. *Campo*, 828 So.2d 502.

Continuing, Mr. Brooks detailed the early morning hours of October 11, 2013, and stated that Mrs. Brooks woke him, reported that she could not breathe, and that she lost consciousness upon standing. After calling 911, Mr. Brooks began CPR and maintained that effort for the thirty minutes it took for the

9

ambulance to arrive. She was pronounced dead at the hospital. Mr. Brooks testified that he was not told that night why his wife died. He instead stated that when he inquired about what had happened, "no one knew[.]" Mr. Brooks acknowledged that it was not "normal" for a twenty-four-year-old to die, thus prompting his request for an autopsy.

Mr. Brooks explained that he picked up the autopsy report upon its December 19, 2013 completion, and that the packet from the coroner's office included a "MedlinePlus article[.]" Mr. Brooks denied having discussions with anyone about why his wife died before receiving the autopsy report. After review of the report and article, however, Mr. Brooks explained that he started to "ask [himself] questions of concerns [sic] of the complaints that we had on the 10th, and then through the autopsy report of what actually caused it and the symptoms[.[5]]" He then had a discussion with a friend "in the medical field[,]" who referred him to an attorney.

This testimony demonstrates Mr. Brooks' correlation of his wife's reporting of her symptoms at her final doctor's appointment; Dr. Meaux's response thereto; his wife's death the following the determination of her cause of death; and the MedlinePlus article's listing of the symptoms of her condition. He claims that it was not until the receipt of information as to the final element as to potentially tortious medical treatment that he had the type of constructive knowledge required by supreme court decisions as set forth in *Campo*, 828 So.2d at 510 (emphasis added) as follows: "**Prescription commences when a plaintiff obtains actual or**

---

[5] The plaintiff submitted the referenced MedlinePlus article included "Fatigue"; "Feeling of racing heart or skipping beats (palpitations)"; "Increased night-time urination (nocturnal)"; "Shortness of breath with activity and when laying flat"' and "Swelling of the ankles[.]"

**constructive knowledge of facts indicating to a reasonable person that he or she is the victim of a tort**."

While Dr. Meaux points to the date of death and the date of the death certificate as evidence of constructive knowledge, "a plaintiff's mere apprehension that something may be wrong is insufficient to commence the running of prescription unless the plaintiff knew or should have known through the exercise of reasonable diligence *that his problem may have been caused by acts of malpractice*." *Id.* at 511 (emphasis added). Further, "[e]ven if a malpractice victim is aware that an undesirable condition has developed after the medical treatment, prescription will not run as long as it was *reasonable* for the plaintiff not to recognize that the condition might be treatment related." *Id.* "The ultimate issue is the *reasonableness* of the patient's action or inaction, in light of his education, intelligence, the severity of the symptoms, and the nature of the defendant's conduct." *Id.*

That supreme court expression is absent, however, from the fifth circuit case relied upon by Dr. Meaux for the proposition that, in a malpractice case involving the victim's death, "the damage resulting from the alleged malpractice is readily apparent. Thus, in a malpractice action for wrongful death, the prescriptive period begins running on the date of the malpractice death since that is the date the claimants are injured." *See Carter v. Ochsner Clinic Found.*, 07-889, p. 6 (La.App. 5 Cir. 3/11/08), 978 So.2d 562, 565, *writ denied*, 08-0936 (La. 8/29/08), 989 So.2d 99. Undoubtedly, the *damage* in this case was readily apparent at the time of Mrs. Brooks' death. In *Campo*, 828 So.2d at 511, however, the supreme court instructed that even upon an awareness of damages, prescription "will not run as

11

long as it was *reasonable* for the plaintiff not to recognize that the condition might be treatment related."

Dr. Meaux further observes that "[a] claimant is not required to be informed by a medical practitioner or an attorney of possible medical malpractice before the prescriptive period begins to run." *Carter*, 978 So.2d at 565 (citing *Abbott v. Louisiana St. Univ. Med. Ctr.-Shreveport*, 35,693 (La.App. 2 Cir. 2/27/02), 811 So.2d 1107, *writ denied*, 02-952 (La. 5/31/02), 817 So.2d 104). While true that commencement of prescription is not dependent on information obtained from medical personnel or an attorney, that further information may, however, be important to an inquiry into the reasonableness of a plaintiff's awareness that he was the victim of a tort as articulated in *Campo*.

In *Powell v. St. Francis Medical Center, Inc.*, 52,462 (La.App. 2 Cir. 2/27/19), 265 So.3d 1184, the second circuit conducted such a reasonableness inquiry in rejecting a plaintiff's suggestion that he did not know that the defendant hospital was allegedly at fault in failing to treat a blood clot in his wife's brain until he consulted an attorney after her death. While the second circuit found that prescription in the matter, in fact, commenced at the time of the death, it did so due to numerous facts indicative of fault by the defendant. The panel explained that "plaintiff was aware of the persistence and increasing severity of his wife's headaches, that she was required to return to the hospital to seek treatment for the headaches, that [the hospital] had not done any tests even after his wife returned to the hospital complaining that her headaches were worse, that a CT scan performed soon after those visits to [the hospital] showed a blood clot in her brain and that the blood clot was the cause of his wife's symptoms." *Id.* at 1187. Accordingly, "[b]ased on that evidence presented, there was a reasonable basis . . . to suspect

12

that more could have been done to diagnose his wife's condition" at the hospital on the date of her death. *Id.* "At that time, he possessed knowledge of facts strongly suggestive that his wife's death may have been the result of improper treatment." *Id.* As apparent in the *Powell* analysis, the mere awareness of damages, alone, is insufficient to commence prescription as urged by Dr. Meaux. The second circuit instead considered a variety of factors in its consideration of whether the plaintiff had "knowledge of facts strongly suggestive" that his wife's death resulted from improper treatment.

On review of this case, the constellation of knowledge of facts strongly suggestive of improper treatment *at the time of Mrs. Brooks' death* is absent. More persuasive on this point is this court's recent consideration of a malpractice claim in which the plaintiff sought recovery for damages allegedly sustained by her daughter at the time of her delivery by caesarean section in September 2016. *See In re Castle*, 18-881 (La.App. 3 Cir. 4/17/19), _ So.3d _. Citing the supreme court's directive in *Campo*, the *Castle* panel explained that, although the plaintiff was aware of complications at the time of the procedure, it was not until an expert witness's evaluation of the case in May 2018 that the plaintiff discovered "that the emergency c-section which caused her child's developmental problems had been performed unnecessarily." *Id.* at 7. Under the facts of that case, the panel concluded that because the plaintiff's claim was filed "within one year of the alleged discovery date . . . the claim was filed within the prescriptive period set forth in La.R.S. 9:5628(A)." *Id.*

Following review, we find that, under the circumstances presented, Mr. Brooks was reasonable in not having recognized the alleged connection between his wife's reporting of symptoms before her death, and Dr. Meaux's treatment of

13

those symptoms prior to the release of the autopsy report and the accompanying article detailing the symptoms. While the death certificate listed Mrs. Brooks' cause of death, it did not include the listing of symptoms that prompted further correlation with her medical treatment. Accordingly, given the strict construction afforded statutes setting forth prescriptive periods, we conclude that the trial court erred in sustaining the exception of prescription. *Bailey*, 891 So.2d 1268. By decree below, we reverse that ruling and further deny the exception.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is reversed, and the exception of prescription is denied. This matter is remanded for further proceedings. Costs of this proceeding are assigned to the defendant-appellee, Dr. Rachelle Meaux.

**REVERSED AND REMANDED.**