# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## CA 18-893


**MARTHA MAY LEE, ET AL.**

**VERSUS**

**AMERICAN SUPPLY CO., ET AL.**


**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF VERMILION, NO. 95783
HONORABLE LAURIE A. HULIN, DISTRICT JUDGE

**********

## BILLY HOWARD EZELL
## JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Billy Howard Ezell, and John E. Conery, Judges.

**Conery, J., concurs.**

**REVERSED AND REMANDED.**

**James H. Brown, Jr.**
**Frilot, LLC**
**1100 Poydras Street, Suite 3700**
**New Orleans, LA 70163**
**(504) 599-8000**
**COUNSEL FOR DEFENDANT/APPELLEE:**
  **CBS Corp., A Delaware Corp. f/k/a Viacom Inc., etc**

**Kathleen Fontenot Drew**
**Adams & Reese**
**One Shell Square**
**New Orleans, LA 70139**
**(504) 581-3234**
**COUNSEL FOR DEFENDANT/APPELLEE:**
  **Chevron Phillips Chemical Co., LP**

**Alexander E. Cosculluela**
**Adams & Reese**
**1221 McKinney, Suite 4400**
**Houston, TX 77010**
**(713) 652-5151**
**COUNSEL FOR DEFENDANT/APPELLEE:**
  **Chevron Phillips Chemical Co., LP**

**Tyson Brahm Shofstahl**
**Adams & Reese**
**4500 One Shell Square**
**New Orleans, LA 70139**
**(504) 581-3234**
**COUNSEL FOR DEFENDANT/APPELLEE:**
  **Kaneb Management Co., LLC**

**Richard P. Sulzer**
**Robert E. Williams**
**Sulzer & Williams, L.L.C.**
**201 Holiday Blvd., Suite 335**
**Covington, LA 70433**
**(985) 898-0608**
**COUNSEL FOR DEFENDANT/APPELLEE:**
  **Baker Hughes Oilfield Operations, Inc. (Individually and as successor-in-interest to Milchem Incorporated, and as sucessor-by-merger to Oil Base, Inc.)**

**Mickey P. Landry**
**Frank Joseph Swarr**
**Philip C. Hoffman**
**Matthew C. Clark**
**Landry & Swarr, LLC**
**1010 Common Street, Suite 2050**
**New Orleans, LA 70112**
**(504) 299-1214**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
    **Mantle Lee**
    **Mona Natemeyer**
    **Martha May Lee**

**McGready L. Richeson**
**Pugh Accardo**
**1100 Poydras Street, Suite 3300**
**New Orleans, LA 70112**
**(504) 312-4713**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
    **Montello, Inc.**
    **Union Carbide Corp.**

**Spencer R. Doody**
**Martzell, Bickford & Centola, A.P.C.**
**338 Lafayette Street**
**New Orleans, LA 70130**
**(504) 581-9065**
**COUNSEL FOR INTERVENORS/APPELLANTS:**
    **Phyllis Lee Boudreaux**
    **Maris Whitey Lee**
    **Merlyn Pat Lee**

**Darren P. McDowell**
**Simon Greenstone Panatier, PC**
**1201 Elm Street, Suite 3400**
**Dallas, TX 75270**
**(214) 276-7680**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
    **Martha May Lee**
    **Mantle Lee**
    **Mona Natemeyer**

**S. Ann Saucer**
**The Carter Long Law Firm**
**4310 North Central Expressway, Suite 104**
**Dallas, TX 75206**
**(972) 890-6498**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
  **Martha May Lee**
  **Mantle Lee**
  **Mona Natemeyer**

**EZELL, Judge.**

David Lee died on April 23, 2012. This appeal presents the issue of whether his widow and children's survival action claims for exposure to asbestos are prescribed.

**FACTS**

Mr. Lee's widow, Martha Lee, and two of his children, Mona Natemeyer and Mantle Lee, filed suit against several defendants for survival and wrongful death damages on June 6, 2012, pursuant to La.Civ.Code arts. 2315.1 and 2315.2. David's other children, Phyllis Boudreaux, Maris Lee, and Merlyn Simon, intervened in the suit, also asserting claims for survival and wrongful death damages.

The family alleges that Mr. Lee was exposed to injurious levels of asbestos while working as a crew boat captain and mechanic throughout Louisiana and Texas from 1954 to 1967. They also alleged that he was exposed to asbestos fibers from 1967 to 1973 while working in the drilling mud industry in Intracoastal City, Louisiana and Berwick, Louisiana.

In late 2000, Mr. Lee was admitted to the hospital suffering with abdominal pain as the result of gallstones. His gallbladder was removed. The pathology report indicated that Mr. Lee had an occupational history of exposure to asbestos, and mesothelial cells were identified. Dr. Richard Reed diagnosed atypical mesothelial hyperplasia rather than mesothelioma, observing that it did not show significant invasiveness. Dr. Reed noted that Mr. Lee should be carefully followed.

On January 9, 2008, Mr. Lee went to Our Lady of Lourdes Hospital in Lafayette complaining of severe abdominal pain and inability to stand up. An upper GI and esophagogastroduodenoscopy and a colonoscopy were performed. A

CT scan of the pelvis and abdomen noted "abnormal wall thickening in the gastric antrum and pylorus which could be inflammatory or malignant." He was treated for diverticulitis.

On February 18, 2008, he was admitted to Lafayette General Medical Center where he underwent an exploratory laparotomy. A small bowel carcinoid tumor was removed. Seeding, or multiple small nodules, was also noted in the lining of the stomach, and biopsies were taken. Dr. Michael Cain, a medical oncologist and hematologist, was asked to consult on the case.

The carcinoid tumor was completely removed. Dr. Cain told Mr. Lee that he did not know the nature of the small nodules yet. Mr. Lee first saw Dr. Cain on March 3, 2008, after he was discharged from the hospital. Dr. Cain stated that the once the pathology report was finalized, it showed a well-differentiated papillary mesothelioma. Abdominal fluid also removed at the time of the surgery indicated cells consistent with the same pathology. Dr. Cain could not remember the exact conversation with Mr. Lee. He stated he would typically tell a patient that the nodules have malignant potential, but the pathology indicated low-grade features, making the behavior unpredictable. Dr. Cain explained that well-differentiated papillary mesothelioma is considered a lower-grade malignancy because it has a slower growth rate and is less likely to cause symptoms in the future. However, it needs to be followed long term, because it can have an unpredictable course. It is considered metastatic at diagnosis because it is already diffusely involving the abdominal contents. Dr. Cain explained that mesotheliomas are known to be associated with asbestos exposure. However, malignant papillary mesotheliomas do not have as strong of a cause and effect relationship.

2

Since Mr. Lee was then asymptomatic, a period of observation was recommended. Dr. Cain told Mr. Lee that no further treatment was indicated for the carcinoid tumor that was removed. Dr. Cain recommended that Mr. Lee return in three months for a follow-up visit. Barring any new symptoms, Mr. Lee should repeat imaging in six months. Dr. Cain stated that he would have told Mr. Lee he had cancer.

Dr. Cain continued to see and observe Mr. Lee over several years. The August 19, 2010 CT scan did show some minor progression of the disease. Dr. Cain did not see any indications to consider therapy.

The March 12, 2012 CT scan showed considerable increase in the disease in the stomach. When Mr. Lee saw Dr. Cain at that time, he was in a wheelchair due to some back issues. He complained of increased abdominal bloating, discomfort, and a twenty-pound weight gain since the previous visit with Dr. Cain. Dr. Cain found Mr. Lee's abdomen distended and a mass in the upper right quadrant. Dr. Cain also noted an accumulation of fluid in the peritoneal cavity. Dr. Cain referred Mr. Lee to the hospital for removal of the fluid from the abdominal cavity. Dr. Cain stated that he told Mr. Lee he was experiencing progression of the disease.

Dr. Cain referred Mr. Lee to Dr. Henry Kaufman for consultation about removing as much of the disease from the abdomen as possible. On April 9, 2012, Mr. Lee went to the emergency room complaining of weakness, lethargy, poor appetite, abdominal discomfort, and distention. He was also exhibiting symptoms of confusion. Seven-and-a-half liters of fluid was previously removed from Mr. Lee's abdomen, so Dr. Cain admitted Mr. Lee to the hospital for dehydration secondary to the abdominal issues. At this time, Mr. Lee was deemed not to be an acceptable surgical candidate for removal of the disease in his abdomen. There

were no recommendations for chemotherapy or other treatment options due to his declining clinical status. He was advised his disease was terminal and discharged from the hospital. Mr. Lee died shortly thereafter on April 23, 2012.

Following the suit filed by the family of Mr. Lee, many motions and exceptions were filed by the Defendants. Baker Hughes Oilfield Operations, Inc. filed an exception of prescription to the survival action claims, which is the subject of the present appeal. A hearing was held on July 5, 2018. After listening to arguments and reviewing the evidence introduced, the trial court granted Baker Hughes' exception of prescription. A judgment was signed on July 5, 2018, dismissing the survival action claims of Mrs. Lee and the five children. The family then filed the present appeal.

**PRESCRIPTION OF SURVIVAL ACTION**

In oral reasons for judgment, the trial court found that Mr. Lee became aware he had cancer on March 3, 2008, when the pathology report was discussed with him. The trial court then determined that, on August 28, 2008, there was a manifestation of the disease as mesothelioma.

Baker Hughes agrees with the trial court's conclusion that Mr. Lee became aware he had mesothelioma on March 3, 2008, when his oncologist explained the pathology report to him. Baker Hughes argues that suit was not filed until more than four years after Mr. Lee's diagnosis, so the survival action claims are prescribed.

The Plaintiffs argue the trial court erred in sustaining the exception of prescription because Mr. Lee did not sustain any appreciable damage that was determinable to a reasonable person in his circumstances more than a year before the case was filed. Specifically, they claim that the trial court erred in finding that

4

Mr. Lee was told he had mesothelioma in 2008 when it was not until 2012 that he was first diagnosed with malignant mesothelioma. The Plaintiffs claim that this was the first time he was told he had mesothelioma and that the condition could possibly be related to his asbestos exposure.

> The standard of review of a trial court's ruling on a peremptory exception of prescription turns on whether evidence is introduced. *Wells Fargo Financial Louisiana, Inc. v. Galloway*, 17-413 (La. App. 4 Cir. 11/15/17), 231 So.3d 793, 800. When no evidence is introduced, appellate courts review judgments sustaining an exception of prescription *de novo*, accepting the facts alleged in the petition as true. *Id*. *Lennie v. Exxon Mobil Corporation*, 17-204 (La. App. 5 Cir. 6/27/18), 251 So.3d 637, 642, *writ denied*, 18-1435 (La. 11/20/18), 256 So.3d 994. However, when evidence is introduced at a hearing on an exception of prescription, the trial court's findings of fact are reviewed under the manifest error standard. *Id*.; *Tenorio v. Exxon Mobil Corp.*, 14-814 (La. App. 5 Cir. 4/15/15), 170 So.3d 269, 273, *writ denied*, 15-1145 (La. 9/18/15), 178 So.3d 149. When evidence is introduced but the case involves only the determination of a legal issue, not a dispute regarding material facts, an appellate court must review the issue *de novo*, giving no deference to the trial court's legal determination. *Wells Fargo*, 231 So.3d at 800; *Cawley v. National Fire & Marine Ins. Co.*, 10-2095 (La. App. 1 Cir 5/6/11), 65 So.3d 235, 237.

> Ordinarily, the party urging prescription bears the burden of proving that the cause of action has prescribed. *Vicari v. Window World, Inc.*, 14-870 (La. App. 5 Cir. 5/28/15), 171 So.3d 425, 435, *writ denied*, 15-1269 (La. 9/25/15), 178 So.3d 570. However, when prescription is evident on the face of the pleadings, the burden shifts to the plaintiff to show the action has not prescribed. *Id*. Prescriptive statutes are strictly construed against prescription and in favor of the obligation sought to be enforced. *Allday v. Newpark Square 1 Office Condo. Assn., Inc.*, 12-577 (La. App. 5 Cir. 3/13/13), 113 So.3d 346, 348.

*DeFelice v. Federated Nat. Ins. Co.*, 18-374, pp. 2-3 (La.App. 5 Cir. 7/9/19), ___ So.3d ___, ___; *Brooks v. Meaux*, 18-980 (La.App. 3 Cir. 6/12/19), 275 So.3d 41, *writ denied*, 19-1135 (La. 10/8/19), ___ So.3d ___.

> A. If a person who has been injured by an offense or quasi offense dies, the right to recover all damages for injury to that person, his property or otherwise, caused by the offense or quasi offense, shall

survive for a period of one year from the death of the deceased in favor of:

> (1) The surviving spouse and child or children of the deceased, or either the spouse or the child or children.
>
> . . . .
>
> C. The right of action granted under this Article is heritable, but the inheritance of it neither interrupts nor prolongs the prescriptive period defined in this Article.

La.Civ.Code art. 2315.1.

The survivor's right to assert the decedent's claim for damages, which came into existence simultaneously with the existence of the tort, does not come into existence until the moment of death. *Watkins v. Exxon Mobil Corp.*, 13-1545 (La. 5/7/14), 145 So.3d 237. This assumes the decedent did not assert a claim for damages prior to his death or that the claim for damages had not prescribed prior to his death. *Id.* The time period for asserting a claim for survival damages is a one-year period of liberative prescription. *Id.*

Prescription starts to run from the day injury or damage is sustained, and damage is sustained when it has manifested itself with enough certainty to support a cause of action. *Cole v. Celotex Corp.*, 620 So.2d 1154 (La.1993); *Trahan v. BP Am. Prod. Co.*, 16-267 (La.App. 3 Cir. 12/7/16), 209 So.3d 166, *writ denied*, 17-22 (La. 3/24/17), 216 So.3d 815; *Labbe Serv. Garage Inc. v. LBM Distribs., Inc.*, 94-1043 (La.App. 3 Cir. 2/1/95), 650 So.2d 824. "[T]he question is whether, in light of plaintiff's own information and the diagnoses he received, the plaintiff was *reasonable* to delay in filing suit." *Cole*, 620 So.2d at 1157.

It is the totality of such circumstances that are considered in determining the date of diagnosis and the reasonableness of the plaintiff's action or inaction. *Cole*, 620 So.2d 1154; *Bailey v. Khoury*, 04-0620 (La. 1/20/05), 891 So.2d 1268.

In *Cole*, 620 So.2d at 1154, the supreme court considered circumstances more suggestive of notice of injury than in the present case before rejecting the trial court's determination that the plaintiff in that case would be imputed with that notice. For instance, the supreme court explained that the medical record supported the plaintiff's deposition testimony that he was informed that he was told "'something showed up on his chest x-ray'[.]" *Id.* at 1155. He was then placed in an Asbestos Survey Program that included annual exams and x-ray monitoring. He was eventually "told to stay away from asbestos even with a respirator" and, in a letter issued by a pulmonologist, was told that he "had evidence of asbestos related lung disease." *Id.* However, his treating physician later told him the findings on that x-ray could be due to several causes other than asbestosis. *Id.*

Despite the indicia of an asbestos related condition, the supreme court found manifest error in the lower courts' determination that the plaintiff had constructive knowledge that he had asbestosis. *Id.* The supreme court explained that the plaintiff relied upon what he was told by his physician "as well as his own subjective state of health which was that he never had any ill effects or symptoms related to asbestosis." *Id.* at 1157. Accordingly, the plaintiff in *Cole* could not be "chargeable" with that knowledge. *Id.* at 1158.

The supreme court likewise found that denial of an exception of prescription was appropriate in *Bailey v. Khoury*, 891 So.2d at 1279, a case posing the question of whether the prescriptive period for a claim "arising from birth defects or other prenatal injuries should commence on a date prior to the child's birth when the parent acquired knowledge of the birth defects as a result of a medical procedure."

7

Despite the fact that the plaintiff in *Bailey* admitted in her deposition that she knew of the defects prior to the child's birth, the supreme court reasoned that her knowledge of the condition was not so exact or extensive as to "mean that she immediately obtained 'actual or constructive knowledge of facts indicating to a reasonable person that he or she is the victim of a tort,' as required for application of the discovery rule." *Id.* at 1285 (quoting *Campo v. Correa*, 01-2707, p. 11 (La. 6/21/02), 828 So.2d 502, 510).

Since evidence was introduced at the hearing on the exception of prescription, we review the trial court's determination under a manifest error standard. In addition to the evidence already discussed in this opinion, the following evidence was introduced at the hearing.

Dr. Cain testified that when he first met with Mr. Lee, he told him that he had cancer in the lining of his stomach which was benign but needed to be followed and monitored. Dr. Cain agreed that he never discussed with Mr. Lee the possibility that asbestos might be related. Dr. Cain admitted that Mr. Lee did not have a diagnosis of malignancy until March 16, 2012.

Mrs. Lee testified that she and her husband were aware that peritoneal mesothelioma was suspected after the surgery in 2008. In the weeks before the pathology report came back, the couple discussed what time period Mr. Lee could have worked around asbestos, acknowledging that asbestos caused mesothelioma. However, she explained that it was later confirmed by the doctor to them that the pathology report was negative for mesothelioma.

Dr. Edward Holstein, an expert hired by the Lee family, stated in his deposition that a well-differentiated papillary mesothelioma could indicate a benign or malignant condition. Dr. Holstein reviewed Mr. Lee's medical records

and opined that Mr. Lee's doctors considered Mr. Lee to have a condition that was "typically benign" and they considered it to be nonmalignant, with an uncertain future. Dr. Holstein further opined that the Lees thought that Mr. Lee did not have a fully-characterized growth in his stomach related to asbestos, though he needed to be subjected to monitoring and scans from time to time. Dr. Holstein noted that no change was implemented in the recommendations and treatment plan by Dr. Cain until March 16, 2012.

We find that the trial court was clearly wrong in its determination that Mr. Lee's survival action had prescribed when suit was filed by his heirs. Dr. Cain testified that he could not remember what he told the Lees. His testimony referred to what he probably told the Lees. In reviewing both Dr. Cain's and Mrs. Lee's testimony, it is clear that the Lees believed that Mr. Lee did not have cancer related to mesothelioma when the pathology report came back. They were told that he just needed to be followed and no treatment was necessary as the condition was benign. During the following years, Mr. Lee went for his follow-up visits and no treatment was ever recommended. It was not until his visit with Dr. Cain in 2012 that a malignancy was diagnosed. A reasonable person would not think that they had mesothelioma caused by asbestos until the diagnosis in March 2012, when the treatment plan was changed. Mr. Lee had a much lesser degree of knowledge regarding his condition and its causes than the plaintiffs in *Cole* and *Bailey*. In keeping with that supreme court jurisprudence, he cannot be attributed with actual or constructive knowledge of any injury from asbestos before March 12, 2012. He was never treated for mesothelioma.

For the above reasons, we find that trial court erred in granting Baker Hughes' exception of prescription. We reverse the judgment sustaining the

9

exception and dismissing Mr. Lee's heirs' survival action claims and remand the matter back to the trial court for further proceedings. Costs of this appeal are assessed to Baker Hughes.

**REVERSED AND REMANDED.**